Adam Stoddard SB No. 272691
Marc G. Cowden SB No. 169391
ZENERE COWDEN & STODDARD APC
2005 De La Cruz Blvd., Suite 240
Santa Clara, CA 95050
(408) 430-3551
astoddard@zcslawfirm.com
mcowden@zcslawfirm.com

Attorneys for Defendants COUNTY OF SAN MATEO (also sued herein as SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES), SHERIFF CHRISTINA CORPUS, DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER, MICHAEL DEL ROSARIO, and ANTHONY ARELLANO, R.N.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HARRISON and SUSAN HARRISON, individually and as Successors in Interest of the Estate of KYLE HARRISON,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN MATEO; SHERIFF CHRISTINA CORPUS; DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER; SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES; MICHAEL DEL ROSARIO; ANTHONY ARELLANO; R.N.; and DOES 1-40,<br><br>Defendants. | Case No.: 3:25-cv-11087-AMO<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>Complaint Filed: December 30, 2025<br><br>Date:   June 18, 2026<br>Time:  2:00 p.m.<br>Dept:  Courtroom 10 — 19th Floor<br>District Judge Araceli Martinez-Olguin |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 1

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 7

II.   LEGAL ARGUMENT ................................................................................................... 7

    A.    The Doe Defendants Must be Dismissed................................................................... 7

    B.    The First Cause of Action (Deliberate Indifference to Serious Medical Needs)
        Cannot be Maintained Against the County.................................................................. 8

    C.    The First Cause of Action (Deliberate Indifference to Serious Medical Needs)
        Fails to State Sufficient Facts ................................................................................... 9

    D.    The Second Cause of Action (Deliberate Indifference – Failure to Protect From
        Harm) Cannot be Maintained Against the County .................................................... 16

    E.    The Second Cause of Action (Deliberate Indifference – Failure to Protect From
        Harm) Fails to State Sufficient Facts ........................................................................ 16

    F.    The Third Cause of Action (Loss of Familial Relationship) Cannot be Maintained
        Against the County .................................................................................................... 16

    G.    The Third Cause of Action (Loss of Familial Relationship) Cannot be Maintained
        Against the County .................................................................................................... 16

    H.    The Fourth Cause of Action (Survival Actions – Medical Malpractice)
        Fails to State Sufficient Facts ................................................................................... 19

    I.    The Fifth Cause of Action (Survival Actions – Violation of Gov. Code 844.6 and
        845.6) Fails to State Sufficient Facts ....................................................................... 20

    J.    The Sixth Cause of Action (Survival Actions – Violation of Gov. Code 815.2 –
        Negligent Supervision, Training, Hiring and Retention)
        Fails to State Sufficient Facts ................................................................................... 22

    K.    The Seventh Cause of Action (Wrongful Death) Fails to State Sufficient Facts....... 24

    L.    The Eighth Cause of Action (Negligence) Fails to State Sufficient Facts................. 24

    M.    Punitive Damages and Prayers for Attorneys' Fees Must be Stricken ...................... 25

    N.    The Prayer for Lost Wages/Earning Capacity Must be Stricken............................... 25

III.  CONCLUSION............................................................................................................ 27

**TABLE OF AUTHORITIES**

Cases:

*Baker v. County of Sonoma,* No. 08–cv–03433–EDL, 2009 WL 330937, at *4
(N.D.Cal. Feb. 10, 2009)................................................................................................... 11

*Benavidez v. Cty. of San Diego,* 993 F.3d 1134 (9th Cir. 2021)................................................ 8, 9

*Berry v. City of Muskogee,* 900 F.2d 1489 (10th Cir. 1990) ........................................................ 25

*Bogan v. Keene Corp.,* 852 F.2d 1238, 1239 (9th Cir.1988) .......................................................... 7

*Braninburg v. Coalinga State Hosp.,* 2009 WL 3398886 (2009).................................................... 14

*C.A. v. William S. Hart Union High School Dist.,* (2012) 53 Cal.4th 861..................................... 23

*Carey v. Piphus,* 435 U.S. 247 (1978) ......................................................................................... 25

*Castaneda v. Department of Corrections & Rehabilitation,* (2013) 212 Cal.App.4th 1051 ....... 19

*Castro v. Cty. of Los Angeles,* 833 F.3d 1060 (2016)..................................................................... 15

*Cf. Chestnut v. California Dep't of Corr. Parole Outpatient Clinic Serv.,*
No. C03-5439VRW(PR), 2004 WL 603503, at *1 (N.D. Cal. Mar. 18, 2004) .......................... 16

*City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)............. 9

*City of Newport v. Fact Concerts, Inc.,* (1981) 453 U.S. 247....................................................... 25

*Creason v. Department of Health Services,* (1998) 18 Cal.4th 623 ............................................. 19

*Curtis T. v. County of Los Angeles,* (2004) 123 Cal.App.4th 1405 .............................................. 19

*Dang v. Cross,* 422 F.3d 800 (9th Cir.2005) ................................................................................ 25

*Davis v. Bender Shipbuilding & Repair Co.,* 27 F.3d 426 (9th Cri. 1994)................................... 26

*De Villers v. County of San Diego,* (2007) 156 Cal.App.4th 238.................................................. 23

*Est. of Chivrell v. City of Arcata,* 623 F. Supp. 3d 1032 (N.D. Cal. 2022) ........................... 17, 18

*Estate of Mendez v. City of Ceres,* 390 F. Supp. 3d 1189 (E.D. Cal. 2019) ........................... 17, 18

*Estelle v. Gamble,* 429 U.S. 97 (1976) .............................................................................. 9, 10, 14

*Farmer v. Brennan,* 511 U.S. 825 (1994) ............................................................................... 10, 13

*Fifty Assocs. v. Prudential Ins. Co.,* 446 F.2d 1187 (9th Cir.1970)................................................ 7

*George v. Sonoma Cty. Sheriff's Dep't,* 732 F. Supp. 2d 922 (N.D. Cal. 2010) .......................... 15

*Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir. 1980) ........................................................................ 8

*Gordon v. City. of Orange,* 888 F.3d 1118 (9th Cir. 2018) .......................................................... 16

*Gordon v. Cty. of Orange*, 6 F.4th 961 (9th Cir. 2021) ................................................................... 8

*Graziose v. Am. Home Prods. Corp.,* 202 F.R.D. 638 (D. Nev. 2001)........................................... 7

*Hamilton v. Endell,* 981 F.2d 1062 (9th Cir.1992) ........................................................................ 14

*Hunt v. Dental Dept.,* 865 F.2d 198 (9th Cir.1989) ...................................................................... 11

*Hutchinson v. United States,* 838 F.2d 390 (9th Cir.1988) .......................................................... 11

*J.K.J.,* 2020 WL 738178 at \*3-4 .................................................................................................. 26

*Jensen v. Lane County,* 312 F.3d 1145 (9th Cir. 2002) ............................................................... 11

*Jett v. Penner,* 439 F.3d 1091 (9th Cir. 2006) ................................................................... 10, 11, 13

*Johnson v. Schwarzenegger,* 366 F. App'x 767 (9th Cir. 2010) ................................................... 16

*Kirkpatrick v. Cnty. of Washoe,* 843 F.3d 784 (9th Cir. 2016) .................................................... 18

*Lattimore v. Dickey,* 239 Cal. App. 4th 959 (2015) ..................................................................... 26

*Lawson v. Superior Court,* (2010) 180 Cal.App.4th 1372 ........................................................... 21

*Leer v. Murphy,* 844 F.2d 628 (9th Cir. 1988) ............................................................................. 10

*Lehr v. Robertson,* 463 U.S. 248 (1983) ...................................................................................... 18

*Lemire v. California Dep't of Corr. & Rehab.,* 726 F.3d 1062 (9th Cir. 2013) ........................... 19

*Lopez v. S. Cal. Rapid Transit Dist.,* (1985) 40 Cal.3d 780 ....................................................... 20

*Lozano v. County of Santa Clara,* (2019 WL 6841215) .............................................................. 15

*Mann v. City of Sacramento,* 748 F.App'x 112 (9th Cir. 2018) ................................................... 17

*Martinez v. Mancusi,* 443 F.2d 921 (2d Cir.1970) ....................................................................... 14

*McCarty v. State of California Dept. of Transp.,* 164 Cal.App.4th 955 (2008) ........................... 19

*McGuckin v. Smith,* 974 F.2d 1050 (9th Cir. 1992) ..................................................................... 10

*McMillan v. Dept. of the Interior,* 907 F. Supp. 322 (D. Nev. 1995) ............................................ 7

*Monell v. Dep't. of Social Servs.,* 436 U.S. 658 (1978) ................................................. 8, 9, 16, 17

*Moor v. County of Alameda,* 411 U.S. 693 (1973) ...................................................................... 26

*Moore v. Thomas,* 653 F.Supp. 2d 984 (N.D. Cal. 2009) ............................................................ 15

*Perez-Torres v. State of California,* (2007) 42 Cal.4th 136 ......................................................... 23

*Randall v. Wyrick,* 642 F.2d 304 (8th Cir. 1981) ........................................................................ 10

*Regents of University of California v. Superior Court,* (2018) 4 Cal.5th 607 ............................. 23

*Robertson v. Wegmann,* 436 U.S. 584 (1974) .............................................................................. 26

*Rosenbaum v. Washoe Cty.,* 663 F.3d 1071 (9th Cir. 2011) ........................................................ 18

*Ruiz v. Podolsky,* 50 Cal. 4th 838 (2010) .................................................................................... 26

*San Diego Gas & Elec. Co. v. Superior Court,* 146 Cal. App. 4th 1545 (2007) ......................... 26

*Sanchez v. Vild,* 891 F.2d 240 (9th Cir. 1989) ............................................................................ 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 4

*Searcy v. Hemet Unified Sch. Dist.,* (1986) 177 Cal.App.3d 792 ................................................ 20

*Seina v. Fed. Det. Ctr. Honolulu,* No. CV 16-00051 LEK/BMK,
2016 WL 916367, at *9 (D. Haw. Mar. 7, 2016) .......................................................................... 8

*Simmons v. Navajo County, Arizona,* 609 F.3d 1011 ................................................................. 10

*Snow v. McDaniel,* 681 F.3d 978 (9th Cir.2012) ........................................................................ 11

*State Farm Mut. Auto. Ins. Co. v. Ireland,* Civ No. 2:07-CV,
2009 WL 4280282, at *3 (D. Nev. Nov. 30, 2009) ...................................................................... 7

*Susman v. Los Angeles,* (1969) 269 Cal.App.2d 803 ................................................................. 20

*Toguchi v. Chung,* 391 F.3d 1051 (9th Cir. 2004) ............................................................... 10, 13

*Turner v. County of Los Angeles,* 18 F. App'x. 592 (9th Cir. 2001) ............................................ 7

*Vt. Agency of Natural Res. V. United States ex rel. Stevens,* 529 U.S. 765 (2000) ..................... 25

*Wakefield v. Thompson,* 177 F.3d 1160 (9th Cir. 1999) .............................................................. 8

*Watson v. State of California,* (1993) 21 Cal.App.4th 836 .................................................... 21, 22

*White v. Napoleon*, 897 F.2d 103 (3d Cir.1990) ........................................................................ 14

*Williams v. Horvath,* (1976) 16 Cal.3d 834 .............................................................................. 20

*Williams v. State of California,* (1983) 34 Cal.3d 18 .................................................................. 23

*Wilson v. Seiter,* 501 U.S. 294 (1991) ........................................................................................ 16

*WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) ...................................................... 10

*Youngberg v. Romeo,* 457 US 307 (1982) .................................................................................. 11

*Zipperer v. County of Santa Clara,* (2005) 133 Cal.App.4th 1013 ............................................. 21


Statutes:

42 U.S.C. § 1983 ............................................................................ 8, 9, 10, 16, 17, 25, 26

42 U.S.C. § 1988 ............................................................................................................. 25, 26

Bus. & Prof. Code, § 2725.1(a) .................................................................................................. 14

Code Civ. Proc., § 377.60 .................................................................................................... 24, 26

Code Civ. Proc., § 425.13 .......................................................................................................... 25

Gov. Code. § 815 ........................................................................................................................ 19

Gov. Code § 815(a) ..................................................................................................................... 19

Gov. Code § 815.2 ........................................................................................................... 20, 22, 23

Gov. Code § 815.2(a) .................................................................................................................. 20

Gov. Code § 820.8 ................................................................................................................ 22, 23

Gov. Code § 844.6 .................................................................................... 19, 20, 23, 25

Gov. Code § 844.6(a) ................................................................................................ 23

Gov. Code § 844.6(a)(2) .......................................................................................... 19

Gov. Code § 845.6 ........................................................................................ 20, 21, 22, 25

Gov. Code § 951 ...................................................................................................... 21


Other:

CACI 3921 .......................................................................................................... 25, 27

## I.    INTRODUCTION

Plaintiffs, GARY HARRISON ("Gary") and SUSAN HARRISON ("Susan"), individually and as Successors in Interest of the Estate of KYLE HARRISON ("Estate") (collectively "Plaintiffs"), filed the Complaint on December 30, 2025 alleging eight (8) causes of action against the COUNTY OF SAN MATEO; SHERIFF CHRISTINA CORPUS; DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER; SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES; MICHEAL DEL ROSARIO; ANTHONY ARELLANO, R.N.; and DOES 1-40. ("Defendants")

Without being granted leave to do so or securing a stipulation from Defendants, Plaintiffs then filed the First Amended Complaint ("FAC") including the same causes of action and Defendants. (Dkt. 23) Defendants move to dismiss and strike on the grounds asserted herein.

## II.    LEGAL ARGUMENT
### A. The Doe Defendants Must be Dismissed.

Plaintiffs sued DOES 1-40 but fail to allege any facts against any particular Doe. The only thing that is alleged for the DOES, is that DOES 1-20 were employees or agents of the COUNTY OF SAN MATEO ("CSM"), DOES 1-10 were purportedly deliberately indifferent, DOES 11-20 were responsible for hiring and screening staff, and DOES 21-40 were also employees of the CSM as well as were deliberately indifferent. (Dkt. 23, Para. 26-27)

The problem is "pleading fictitious Doe defendants is improper in federal court." (quoting *State Farm Mut. Auto. Ins. Co. v. Ireland*, Civ No. 2:07-CV, 2009 WL 4280282, at *3 (D. Nev. Nov. 30, 2009) (citing *Turner v. County of Los Angeles*, 18 F. App'x. 592, 596 (9th Cir. 2001) ["As a general rule, the use of Doe pleading is disfavored in federal court."] and *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 643 (D. Nev. 2001))). Accordingly, "a claim against Does has no effect in federal court" and "dismissal without prejudice of the claims against the Doe defendants is proper." (quoting *State Farm*, 2009 WL 4280282 at *3).

Courts in the Ninth Circuit have recognized that "[g]enerally, 'Doe' pleading is improper in federal court. The Federal Rules do not provide for the use of fictitious defendants." (*Buckheit v. Dennis*, 713 F. Supp. 2d. 910, 918 n. 4 (N.D. Cal. 2010) (citing *Bogan v. Keene Corp.*, 852 F.2d 1238, 1239 (9th Cir.1988); *Fifty Assocs. v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir.1970); and *McMillan v. Dept. of the Interior*, 907 F. Supp. 322 (D. Nev. 1995)).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 7

When situations arise, however, "where the identity of alleged defendant[ ] [is] not [ ] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." (*Wakefield v. Thompson,* 177 F.3d 1160, 1163 (9th Cir. 1999) (alterations in original) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). While "a plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3...he must go further and **allege facts to support how each particular doe defendant violated**" the law. [emphasis added] (*Seina v. Fed. Det. Ctr. Honolulu*, No. CV 16-00051 LEK/BMK, 2016 WL 916367, at *9 (D. Haw. Mar. 7, 2016).) Plaintiffs' allegations for the Doe Defendants are non-existent. Plaintiffs identify "Does" generically 92 times in the FAC; however, they fail to allege a single fact to support how each particular Doe defendant violated the law. Plaintiffs have failed to even attempt to identify what these Does did in relation to Decedent, other than conclusory statements to a large group of Does. They should all therefore be dismissed with prejudice.

### B. The First Cause of Action (Deliberate Indifference to Serious Medical Needs) Cannot be Maintained Against the County.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where an official policy/custom causes a constitutional tort. (See *Monell v. Dep't. of Social Servs.,* 436 U.S. 658, 690 (1978).) But "municipalities may only be held liable under section 1983 for constitutional violations resulting from official county policy or custom." (*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (internal quotation marks omitted).) To impose municipal liability under § 1983, a "plaintiff must prove: (1) [the inmate] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) the policy is the moving force behind the constitutional violation." (*Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (internal quotation marks omitted).) A plaintiff can show municipal liability in three ways. First, "a local government may be held liable when it acts pursuant to an expressly adopted official policy." (*Id.*) (internal quotation marks omitted). Second, "a public entity may be held liable for a longstanding practice or custom." (*Id.*) (internal quotation marks omitted). Third, "a local government may be held liable under Section 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." (*Id.* at 974) (internal

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 8

quotation marks omitted). These "policies can include written policies, unwritten customs and practices, failure to train municipal employees on avoiding certain obvious constitutional violations, and, in rare instances, single constitutional violations [that] are so inconsistent with constitutional rights that even such a single instance indicates at least deliberate indifference of the municipality." (*Benavidez,* 993 F.3d at 1153 (internal citation omitted).) Thus, a municipality is liable under § 1983 where its policy, custom, or practice is "the moving force behind the constitutional violation." (*City of Canton, Ohio v. Harris,* 489 U.S. 378, 379, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).)

A municipality is responsible for a constitutional violation, only when an "action [taken] pursuant to [an] official municipal policy of some nature" caused the violation. (*Monell*, at 691.) A municipality is *not liable* under § 1983 based on the common-law tort theory of respondeat superior. (*Id.*) Because the first cause of action is a deliberate indifference claim based on a failure to respond to a serious medical need by the individually named Defendants, the CSM and the CORRECTIONAL HEALTH SERVICES ("CHS") department, cannot be included in this claim since it would be based on respondeat superior liability. Therefore, the CSM and the CHS can only be held liable for a § 1983 claim based on *Monell* liability and they should be dismissed from this claim accordingly.

**C. The First Cause of Action (Deliberate Indifference to Serious Medical Needs) Fails to State Sufficient Facts.**

To establish an 8th Amendment claim arising out of inadequate medical care, an inmate-plaintiff must prove a "deliberate indifference to serious medical needs." (*Estelle v. Gamble,* 429 U.S. 97, 104 (1976).)  As the *Estelle* opinion explained,

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. ...(I)n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, **a prisoner must allege acts or omissions sufficiently harmful to evidence**

> **deliberate indifference to serious medical needs.** It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. (*Estelle v. Gamble,* 429 U.S. at 106.) [emphasis added]

In the Ninth Circuit, "a determination of deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." (*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc). )

The *McGuckin* court explained,

> Once the prisoner's medical needs and the nature of the defendant's response to those needs have been established, a determination of whether "deliberate indifference" has been established can be made. ...(T)here are certain minimum requirements before deliberate indifference can be established. First, there must be a **purposeful** act or failure to act on the part of the defendant. "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain" sufficient to demonstrate deliberate indifference, *Gamble*, 429 U.S. at 105 (emphases added), nor does "an inadvertent failure to provide adequate medical care" by itself to create a cause of action under § 1983. Id. A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. *McGuckin v. Smith* (9th Cir. 1992) 974 F.2d 1050, 1060. [emphasis added]

Neither an inadvertent failure to provide adequate medical care, mere negligence, medical malpractice, nor a difference of opinion over proper medical treatment is sufficient to constitute the "deliberate indifference" sufficient to violate an inmate's civil rights. (*Simmons v. Navajo County*, *Arizona*, 609 F.3d 1011; see also *Farmer v. Brennan,* 511 U.S. 825, 836 (1994); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).) A plaintiff must prove that: (a) the specific prison official, in acting or failing to act, was deliberately indifferent to an inmate's pain or possible medical need; and (b) this indifference was the actual and proximate cause of harm to the inmate. (*Leer v. Murphy,* 844 F.2d 628, 634 (9th Cir. 1988); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).) A defendant is only liable under the 8th Amendment if the official "knows that inmates face a substantial risk of serious harm <u>and</u> disregards that risk by failing to take reasonable measures to abate it." (*Farmer*, 511 U.S. at 847) [emphasis added]. A difference of medical opinion or judgment does not establish deliberate indifference to serious medical needs. (*Estelle,* 429 U.S. at 107; *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989) (citing *Randall v. Wyrick,* 642

F.2d 304, 308 (8th Cir. 1981).) On the other hand, evidence that a medical defendant exercised his/her *professional judgment* according to generally accepted standards of the medical community establishes the defendant did not violate plaintiff's 8th Amendment rights. (*Jensen v. Lane County*, 312 F.3d 1145, 1148 (9th Cir. 2002); *Youngberg v. Romeo*, 457 US 307, 321-322 (1982).)

In order to establish a violation of that right, Plaintiffs must establish a "serious medical need" such that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." (*Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir.2006).) Next, Plaintiffs must show that Defendants' response to the serious medical need was deliberately indifferent. (*Id.*) Deliberate indifference may be established by evidence of "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." (*Id.*) Deliberate indifference may be shown where prison officials or practitioners "deny, delay or intentionally interfere with medical treatment." (*Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988).) In contrast, "mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." (*Id.*) (*See Hunt v. Dental Dept.,* 865 F.2d 198, 200 (9th Cir.1989) (prisoner's deliberate indifference allegations were sufficient where he alleged "prison officials were aware of his bleeding gums, breaking teeth, and his inability to eat properly, yet failed to take any action to relieve his pain or to prescribe a soft food diet until new dentures could be fitted."); *Baker v. County of Sonoma,* No. 08–cv–03433–EDL, 2009 WL 330937, at *4 (N.D.Cal. Feb. 10, 2009) (allegations of prison officials denying prisoner his pain medication were sufficient to state deliberate indifference claim).)

"The state of mind for deliberate indifference is subjective recklessness." (*Snow v. McDaniel,* 681 F.3d 978, 985–86 (9th Cir.2012).) "Although the deliberate indifference doctrine contains a heightened foreseeability requirement, this requirement differs from the traditional negligence foreseeability requirement only insofar as deliberate indifference requires the defendant to be *subjectively* aware that *serious* harm is likely to result from a failure to provide medical care." (*Gibson,* 290 F.3d at 1193.)

Plaintiffs allege that on the evening of March 14, 2025, ARELLANO provided Decedent his medication (Amitriptyline, Gabapentin, Zofran, and Claritin). (Dkt. 23, Para. 52) Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 11

allege that Decedent was observed by unidentified inmates to be sleeping in his bunk. (Dkt. 23, Para. 53)

Plaintiffs allege that in the early morning hours of March 15, 2025, unidentified inmates heard labored breathing coming from Decedent's bunk, but apparently took no action. (Dkt. 23, Para. 54)

Plaintiffs allege that Decedent did not get up for medication call on March 15, 2025, at 10:30 a.m. and that RAUENBUEHLER communicated on the intercom to the inmates to inquire as to whether they would attend medication call. (Dkt. 23, Para. 56) Plaintiffs allege that RAUENBUEHLER informed unidentified medical staff that he was going to check on Decedent to see if he was going to take his medication, but he failed to do so. (Dkt. 23, Para. 57)

Plaintiffs allege that unidentified inmates heard Decedent's labored breathing and in the afternoon another unidentified inmate saw Decedent sleeping in his bunk. (Dkt. 23, Para. 58) Sometime after 4:00 p.m. an unidentified inmate checked on Decedent and then used the intercom to alert RAUENBUEHLER that Decedent appeared to be in distress. (Dkt. 23, Para. 58)

RAUENBUEHLER arrived at Decedent's bunk at approximately 4:46 p.m., found decedent unresponsive, and then attempted to administer Naran. (Dkt. 23, Para. 59) Medical staff arrived and tried to resuscitate Decedent; however, he was pronounced dead at 5:04 p.m. (Dkt. 23, Para. 60)

An autopsy was performed on March 17, 2025 and determined Methadone was in Decedent's system, but he was never prescribed Methadone while in custody. (Dkt. 23, Para. 61)

Plaintiffs allege that on information and belief, ARELLANO gave Decedent Methadone during evening medication call on March 14, 2025. (Dkt. 23, Para. 62)

For CORPUS, the only thing that she is alleged to have done was being responsible for hiring and training custodial staff and creating policies and procedures. (Dkt. 23, Para. 19-20, 43-45, 48, 69-70, 76, 78, 84-85) Plaintiffs have not alleged that she ever saw Decedent, was ever involved with his care and treatment, had any involvement in the decision of what medications to prescribe or not, etc. Plaintiffs have not alleged that CORPUS knew Decedent faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

For RAUENBUEHLER, Plaintiffs do not allege that he prescribed or administered any of the medication which is alleged to have been a "lethal cocktail". At best, Plaintiffs allege that he

was not properly trained, he communicated to the inmates via the intercom system to inquire if the inmates would attend medication call, he told medical staff he would check on Decedent for a medication check the day after Decedent received this "lethal cocktail" but failed to do so, and once alerted of Decedent's condition, he sprung into action by administering Narcan and summoning medical staff. Regarding the claim of failure to render medical care, the FAC concedes RAUENBUEHLER came to Decedent's aid when he was alerted by inmates that Decedent was in medical distress, and he administered Narcan to try and revive Decedent. (Dkt. 23, Para. 59) Plaintiffs' allegations confirm RAUENBUEHLER was not deliberately indifferent to a serious medical need, but once he was aware a serious medical need existed, he tried to render care.

For ROSARIO, the only thing that he is alleged to have done was being responsible for medical policies and procedures. (Dkt. 23, Para. 21-22, 44-45, 48) Plaintiffs have not alleged that he ever saw Decedent, was ever involved with his care and treatment, had any involvement in the decision of what medications to prescribe or not, etc. Plaintiffs have not alleged that ROSARIO knew Decedent faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

For ARELLANO, Plaintiffs allege that he failed to provide "adequate treatment" to Decedent. (Dkt. 23, Para. 23) Plaintiffs allege ARELLANO administered the medication, while being aware "this could" cause a lethal drug interaction. (Dkt. 23, Para. 47) Plaintiffs have not alleged a serious medical need existed when the medication was administered, or that ARELLANO disregarded the risk by failing to take reasonable measures to abate it. At best, Plaintiffs argue ARELLANO was aware the medication *could* cause of a lethal drug interaction, not that he knew it would. Plaintiffs may have alleged medical malpractice against ARELLANO, but certainly not deliberate indifference. Deliberate indifference is a high legal standard. (*Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).) Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. (*Farmer,* 511 U.S. at 835.) Medical malpractice or negligence is insufficient to establish an 8th Amendment violation. (*Toguchi,* 391 F.3d at 1060.) Thus, mere negligence in diagnosing or treating a condition does not violate the Eighth Amendment. (*Id.* at 1057.) Also, an inadvertent failure to provide adequate medical care alone does not rise to the 8th Amendment level. (*Jett,* 429 F.3d at

1096.) The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." (*Estelle,* 429 U.S. at 105–06.)

In *Braninburg v. Coalinga State Hosp.*, 2009 WL 3398886 (2009), the plaintiff alleged that the healthcare provider prescribed medication that was contraindicated with other medication the plaintiff was taking, and he suffered a seizure and other negative effects from taking the medication the defendant prescribed. The court held that the plaintiff's allegations against the defendant might constitute negligence or medical malpractice, but they did not rise to the level of deliberate indifference. The court therefore dismissed that cause of action and the defendant from the case. The case here for ARELLANO is similar to that of *Braninburg*. Although administering medication that *could* be contraindicated with other medications may constitute medical malpractice, it does not rise to the level of deliberate indifference.

Moreover, Plaintiffs do not allege that ARELLANO, a nurse, was the one who prescribed the medication in the first place. Nurses do not prescribe medications. Pursuant to Business and Professions Code, 2725.1(a) "…a registered nurse may dispense drugs or devices upon an order by a licensed physician and surgeon or an order by a certified nurse-midwife, nurse practitioner, or physician assistant…" *Estelle* instructs that prison officials act with deliberate indifference when they "intentionally interfer[e] with…treatment once prescribed." (429 U.S. at 104-05). Following *Estelle*, the courts have held that a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon.

For example, in *Hamilton v. Endell,* 981 F.2d 1062 (9th Cir.1992), the defendant officials of the Fairbanks Correctional Center transferred the plaintiff to an Oklahoma prison via airplane despite the fact that Hamilton's physician had instructed that, due to a chronic ear problem, Hamilton "should ... not fly anywhere for about six months." (*Id.* at 1064.) As a result of the flight, Hamilton alleged that he suffered severe damage to his ear. The court concluded that the case was "akin to cases finding deliberate indifference where prison officials and doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." (*Id.* at 1066–67 (*citing White v. Napoleon,* 897 F.2d 103, 106–10 (3d Cir.1990); *Martinez v. Mancusi,* 443 F.2d 921, 924 (2d Cir.1970).) Accordingly, the court held that, viewing Hamilton's allegations in the most favorable light, the prison official's "decision to force Hamilton to fly to Oklahoma could have constituted deliberate indifference to his medical needs." (*Hamilton,* 981 F.2d at 1067.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 14

ARELLANO is only alleged to have administered the medication. Since he is a nurse, he cannot prescribe what type of medication inmates are to receive, how much they are to receive, or when they are to receive it. Arguably, ARELLANO could have been deliberately indifferent had he not administered the medication which was prescribed to Decedent. Plaintiffs even allege that ARELLANO "failed to acknowledge that the prescribed medications were a lethal cocktail…" (Dkt. 23, Para. 23) ARELLANO did not prescribe the medication in the first place. Plaintiffs allege that ARELLANO "failed to acknowledge" that the medication which had been prescribed "could cause a lethal drug interaction." (Dkt. 23, Para. 23) ARELLANO is not a medical doctor. ARELLANO is not a toxicologist. ARELLANO does not possess the knowledge, skill and education to know what could be or could not be a lethal drug interaction, and as alleged he did not acknowledge this.

If the medication was contraindicated, that alone does not constitute a deliberate indifference claim. Because neither "mere malpractice" nor gross negligence rises to the level of deliberate indifference, allegations (regarding the provision of a contraindicated medication) are insufficient to allege deliberate indifference. Also, "a difference in medical opinion does not constitute deliberate indifference." (*George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 937.) Although Plaintiffs allege that methadone administered with the other medications Decedent was taking was contraindicated, this does not rise to the level of deliberate indifference. And with respect to the medication that was administered, there is no indication that the provision of contraindicated medication was a "purposeful act" by ARELLANO; to the contrary, his actions would constitute malpractice, not an intentional disregard for Decedent's wellbeing.

In *Lozano v. County of Santa Clara*, (2019 WL 6841215), the plaintiff alleged that he was given Zofran for nausea even though it was contraindicated for him due to his other medical issues. The court held that "While the medication prescribed to Mr. Lozano was contraindicated for him, Dr. Chyorny's actions in permitting such error did not constitute a 'purposeful act or failure to act on the part of the defendant and resulting harm.'" (*Lozano*, at 13) Similarly, while the medication prescribed for Decedent may have been contraindicated for him, ARELLANO did not prescribe it, nor was ARELLANO's action's in permitting the error did not constitute a "purposeful act or failure to act on the part of the defendant and resulting harm." (*Moore v. Thomas*, 653 F.Supp. 2d 984, 1000 (N.D. Cal. 2009).)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 15

**D. The Second Cause of Action (Deliberate Indifference – Failure to Protect From Harm) Cannot be Maintained Against the County.**

Like the first cause of action discussed above, the CSM and the CHS, cannot be included in this claim since it would be based on respondeat superior liability. Therefore, the CSM and CHS can only be held liable for a § 1983 claim based on *Monell* liability.

**E. The Second Cause of Action (Deliberate Indifference – Failure to Protect From Harm) Fails to State Sufficient Facts.**

With respect to the "failure to protect" claim, the Supreme Court has explained that "medical care claims" should be treated as "substantially the same as other conditions of confinement violations including failure-to-protect claims." *Gordon v. City. of Orange*, 888 F.3d 1118, 1124, (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). Within the Ninth Circuit, the elements for such a claim are the same as those required for a "failure to provide medical care" claim. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (enumerating the same factors listed above for "a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer").

"Failure to provide medication to prevent a life-threatening condition may amount to deliberate indifference to a serious medical need." (*Johnson v. Schwarzenegger*, 366 F. App'x 767, 770 (9th Cir. 2010).) However, "it is also possible that any such failure does not [amount to deliberate indifference] on the facts of a particular situation." (*Id.*) Plaintiffs allege that it was only on March 14, 2025, that Decedent was given methadone, which Plaintiffs state was contraindicated based on the other medications he was prescribed. (Dkt. 1, Para. 1) However, it is only alleged that this happened one time, and causing a patient to receive a single dose of medicine does not rise to the level of a constitutional violation. (*Cf. Chestnut v. California Dep't of Corr. Parole Outpatient Clinic Serv.*, No. C03-5439VRW(PR), 2004 WL 603503, at *1 (N.D. Cal. Mar. 18, 2004) ("plaintiff's allegations that he received the wrong dose of psychiatric medication...do not amount to more than a claim for negligence and must be dismissed for failure to state a claim under § 1983").) The failure to protect from harm claim is likewise defective based on the same analysis discussed above for the deliberate indifference to a serious medical need claim. Defendants incorporate by reference the same arguments asserted above.

**F. The Third Cause of Action (Loss of Familial Relationship) Cannot be Maintained Against the County.**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 16

Like the first cause of action discussed above, the CSM and the CHS department, cannot be included in this claim since it would be based on respondeat superior liability. Therefore, the CSM and CHS can only be held liable for a § 1983 claim based on *Monell* liability.

### G. The Third Cause of Action (Loss of Familial Relationship) Cannot be Maintained Against the County.

Unlike the first two causes of action, which make it clear that they are being asserted by the Estate (Survival Action), Plaintiffs do not make it clear for this cause of action. Therefore, to the extent that the Estate seeks to assert this claim, it lacks standing to do so.

The Plaintiffs alleged biological links, and conclusory allegations do not suffice to support a claim for loss of familial association. (*Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189 (E.D. Cal. 2019) ("*Mendez*"); *Est. of Chivrell v. City of Arcata*, 623 F. Supp. 3d 1032, 1044–45 (N.D. Cal. 2022) ("*Chivrell*")).) Plaintiffs allege that they were the biological parents of Decedent. (Dkt. 23, Para. 8, 14) Plaintiffs allege that while in custody, they communicated with Decedent via telephone, video-visits and messages. (Dkt. 23, Para. 7) Plaintiffs allege that they suffered a loss of love, companionship, comfort, care assistance, protection, affection, society, mora support, etc. from Decedent. (Dkt. 23, Para. 96)

In *Mendez* and *Chivrell*, both rely on an unpublished Ninth Circuit case: *Mann v. City of Sacramento*, 748 F.App'x 112, 114 (9th Cir. 2018). In *Mann*, the plaintiffs sued for the loss of their brother. *Mann*, 748 F. App'x at 114. The Ninth Circuit, in an unpublished opinion, held that the brothers' relationship was not protected by the Constitution; and thus, they could not assert a claim. (*Id.* at 114–15). The Ninth Circuit noted that relationships involving marriage, child-rearing, or cohabitation are protected by the First Amendment. (*Id.*) And that "we analyze the right of intimate association in the same manner regardless whether we characterize it under the First or Fourteenth Amendments." (*Id.* at 115). It further explained that "[o]ther relationships, 'including family relationships,' may also be protected"—but only to "the extent that the 'objective characteristics' of the relationship (*i.e.* 'factors such as size, purpose, selectivity, and ... exclu[sivity]') demonstrate that it is "sufficiently personal or private to warrant constitutional protection. (*Id.*) (alternations in original). The court therefore denied the brothers' claims because they lacked "specific facts about the "objective characteristics" of their relationships with [their deceased brother]." (*Id.*) In other words, the plaintiffs in *Mann* did not have a constitutionally protected relationship involving "marriage, child-rearing, or cohabitation." (*Id.*) Their claim

failed in the absence of "objective characteristics" demonstrating that their brotherly bond warranted constitutional protection. (*Id.*)

In the context of parent-child relationships specifically, the Supreme Court has emphasized that the rights of parents are a counterpart of the responsibilities they have assumed: "the mere existence of a biological link does not merit equivalent constitutional protection." (*Lehr v. Robertson*, 463 U.S. 248, 261.) Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and "stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children." (*Id.* at 256–61, 103 S.Ct. 2985; *see also Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (discussing the Fourteenth Amendment rights of an unwed biological father).) Even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections at issue here.

Plaintiffs provide conclusory allegations about the alleged loss of familial relationship with their son. Their claims fail in the absence of "objective characteristics" demonstrating that their relationship warrants constitutional protection. The parents fail to allege any "objective characteristic" that each of their relationships with Decedent was "sufficiently personal or private to warrant constitutional protection." (*Mendez,* at 1217) The mere label of "spouse" or "biological father" alone are insufficient to plead a right of familial association. (*Mendez*, at 1215) (finding plaintiffs had insufficiently pled standing to bring familial association claims for decedent's father, brothers, aunt, grandmother, and grandfather where complaint only used perfunctory language that "he or she 'cohabitated' with [decent] and 'shared a close relationship and special bond' with him, and that the relationship 'presupposed deep attachments, commitments, and distinctively personal aspects of their lives' "). As in *Chivrell* and *Mendez*, the FAC's allegations are only conclusory statements that do not allow the Court to draw a reasonable inference that the Plaintiffs had the deep attachments and commitments with Decedent required to merit the protections of the Fourteenth Amendment.

Moreover, there are no allegations that "shock the conscience" to support such a claim. For familial relationship claims, conduct violates substantive due process if it "shocks the conscience or offends the community's sense of fair play and decency." (*Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (cleaned up).) "A prison official's deliberately

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 18

indifferent conduct will generally 'shock the conscience' so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." (*Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).)  Here, there are no facts alleged that would "shock the conscience." Moreover, the FAC fails to state sufficient facts against each of the Defendants that would warrant recovery for this cause of action. This is especially true for CORPUS and ROSARIO who had absolutely no interactions with Decedent.

### H. The Fourth Cause of Action (Survival Actions – Medical Malpractice) Fails to State Sufficient Facts.

Plaintiffs have sued the CSM, CHS, ROSARIO and ARELLANO for medical malpractice; however, a governmental entity can only be sued based on a statutory violation. As a general rule, a public entity cannot be held liable for common law negligence. (*McCarty v. State of California Dept. of Transp.* (2008) 164 Cal.App.4th 955, 978.) According to Gov. Code § 815(a), all governmental liability is governed by statute. (*Creason v. Department of Health Services* (1998) 18 Cal.4th 623, 630 ["The California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute"].) As explained in *Curtis T. v. County of Los Angeles* (2004) 123 Cal.App.4th 1405, 1414, "governmental entities are immune from being sued unless the Legislature has specifically provided otherwise. The [Tort Claims] Act sets forth the limited circumstances under which the state and other political subdivisions may be sued and the applicable procedural requirements."

Gov. Code section 815 provides that "[a] public entity is not liability for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code. § 815.) In addition, under Gov. Code § 844.6, "a public entity is not liable for: …[a]n injury to any prisoner." (Gov. Code § 844.6(a)(2).)

"Public entities in California are not liable for tortious injury unless liability is imposed by statute. (§ 815.) '[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute.' Section 844.6(a)(2) establishes the State's immunity to liability for injuries to prisoners." (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1069–1070, internal citations omitted.)

The CSM and CHS are a public entity, and Plaintiffs admit Decedent was a prisoner, so the CSM and CHS are immune from liability for any alleged injuries that Decedent suffered. Plaintiffs have not alleged any facts or cited any authorities that would allow them to hold the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 19

CSM/CHS liable for "medical malpractice" given these statutory immunities, nor have they alleged a statutory basis to assert a negligence claim against a public entity.

To state a cause of action, every fact essential to the existence of statutory liability must be pleaded with particularity, including the existence of a statutory duty. (*Susman v. Los Angeles,* (1969) 269 Cal.App.2d 803, 808; *Lopez v. S. Cal. Rapid Transit Dist.,* (1985) 40 Cal.3d 780, 795. "The facts showing the existence of the claimed duty must be alleged." Since the duty of a governmental agency can only be created by statute, the statute claimed to establish the duty must be identified. (*Searcy v. Hemet Unified Sch. Dist.,* (1986) 177 Cal.App.3d 792, 802).

The passage of § 815 was designed to eliminate public entity liability based upon common law tort claims. (*Williams v. Horvath* (1976) 16 Cal.3d 834, 838.) Plaintiffs sued the CSM/CHS for "medical malpractice." This is improper and the CSM/CHS is immune pursuant to § 815. It is anticipated that Plaintiffs may argue that "medical malpractice" can be stated under § 815.2, which states "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Gov. Code § 815.2(a).) First, Plaintiffs did not allege this in the FAC. Second, the more specific language of § 844.6 providing public immunity for prisoner injuries trumps the more general language of § 815.2. Third, Plaintiffs have failed to allege that CSM/CHS owed a duty of care to Decedent in the first place. The Court should grant this motion to dismiss without leave to amend for failure to state facts sufficient to constitute a cause of action.

For ROSARIO, Plaintiffs have failed to allege that he ever provided any direct patient care to Decedent or was in any way involved in his care. Plaintiffs have failed to allege that ROSARIO owed Decedent a duty of care, or that he breached a duty of care owed to Decedent. Without a duty of care, ROSARIO could hardly be said to have acted negligently.

For ARELLANO, Plaintiffs likewise fail to allege that he owed Decedent a duty of care or that he breached a duty. All they allege is that ARELLANO ignored Decedent after he ingested the medication, failed to identify the mixture would be lethal, and failed to properly monitor Decedent. (Dkt. 23, Para. 102) Without a duty of care, ARELLANO could hardly be said to have acted negligently.

I. **The Fifth Cause of Action (Survival Actions – Violation of Gov. Code 844.6 and 845.6) Fails to State Sufficient Facts.**

Plaintiffs allege in a conclusory fashion that Defendants had a duty to furnish and/or summon Decedent immediate medical care. (Dkt. 23, Para. 109) Plaintiffs then allege in a conclusory fashion that all Defendants knew or had reason to know Decedent was in need of immediate medical care. (Dkt. 23, Para. 110) Plaintiffs then allege that all Defendants knew or should have known Decedent was provided methadone, which was contraindicated. (Dkt. 23, Para. 111)

Gov. Code § 845.6 provides, "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

"Thus, under Government Code section 845.6, both a public entity and its employees are immune from claims based on injuries to prisoners caused by a failure to provide medical care, except when an employee, acting within the scope of his employment, fails to provide medical care to a prisoner and has reason to know that need for medical care is immediate." (*Lawson v. Superior Court* (2010) 180 Cal.App.4th 1372, 1384, footnote omitted.) Also, "liability under [Gov. Code] section 845.6 is limited to serious and obvious conditions requiring immediate care." (*Id.* At 1385, quoting *Watson v. State of California* (1993) 21 Cal.App.4th 836, 841.)

Plaintiffs allege in a conclusory fashion that "Defendants" knew, or had reason to know, Decedent was in need of immediate medical care and failed to take reasonable action to summon medical care. Plaintiffs allege no facts showing that any particular employee knew Decedent needed immediate medical care, they fail to allege what medical care was needed, how the employee was aware immediate medical care was needed, or that they ignored Decedent's request for medical care. When alleging a claim against a government entity or employee based on a statute like § 845.6, Plaintiffs are required to allege specific, particularized facts showing that the Defendants violated the statute. (Gov. Code § 951; *Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1021.) Plaintiffs have not pled any specific facts showing that any particular Defendant was actually aware that Decedent needed immediate medical care and failed to summon such care. Plaintiffs allege in a conclusory fashion that all Defendants are liable for

failing to summon care for Decedent, even though Plaintiffs have not alleged how they were aware that Decedent needed immediate medical care and what medical care was required.

There are absolutely no facts alleged that ROSARIO ever interacted with Decedent, or any facts from which he would have been aware Decedent needed immediate medical care, which ROSARIO then ignored. Likewise, pursuant to Gov. Code. Section 820.8, he cannot be liable for the acts of any other public employees. He should unequivocally be dismissed from this claim.

For ARELLANO, at best, Plaintiffs allege that he administered medication that *could* be contraindicated, but there are no facts alleged at any time after that, that he was aware Decedent needed immediate medical care, and he likewise ignored it. He should also be dismissed from this claim.

The only thing that is alleged in the FAC against RAUENBUEHLER, was that he was summoned by inmates, and then immediately administered Narcan to try and help Decedent. Thus, there are no facts alleged that he was aware Decedent needed immediate medical care and failed to summon it. To the contrary, he was summoned and immediately attempted to administer Narcan to revive Decedent. As long as medical care is provided promptly, there is no liability under § 845.6, even if the plaintiff contends that he was not properly diagnosed and treated after medical care was provided. (*Watson v. State of California*, *supra*, 21 Cal.App.4th at 842.) Plaintiffs fail to provide any facts which would support an inference that any employee or agent observed serious and obvious signs that Decedent needed immediate medical care, such that an employee observed said symptoms, and knew or should have known, that "immediate" medical care was warranted. Likewise, pursuant Gov. Code. Section 820.8, he cannot be liable for the acts of any other public employees.

**J. The Sixth Cause of Action (Survival Actions – Violation of Gov. Code 815.2 – Negligent Supervision, Training, Hiring and Retention) Fails to State Sufficient Facts.**

Plaintiffs have sued the CSM, CHS, CORPUS and ROSARIO for negligent supervision, training, hiring, and retention. This cause of action is one based on vicarious liability.

The problem with including CORPUS and ROSARIO as individually named Defendants, is that they are the ones which allegedly negligently hired, supervised, trained and retained other various employees and/or agents of the CSM and CHS. Therefore, they cannot be liable themselves for said negligence. Essentially, Plaintiffs are arguing that CORPUS and ROSARIO should be vicariously liable for their own actions or inactions.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 22

Courts have held a manager, or supervisor generally cannot be held liable for negligently supervising an employee, absent a special protective relationship between the supervisor and the plaintiff (or in this case, the Decedent). (See *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869-879 [finding school personnel owe duty of care to students based on the "special relationship" between school district and the district's pupils]; *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 249 [finding no special protective relationship and thus no liability under section 815.2].) Under settled law, this type of relationship does not exist between CORPUS, ROSARIO and Decedent. (See *Williams v. State of California* (1983) 34 Cal.3d 18, 24, 27-28; see also *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 621.)

Moreover, Plaintiffs have not alleged that CORPUS or ROSARIO knew or had reason to know that anyone they allegedly hired (including ARELLANO and RAUNEBUEHLER) were unfit for their jobs. CORPUS and ROSARIO owed Decedent no legal duty to protect him from contraindicated medication prescribed and administered by someone else; the responsibility for hiring, supervising and dismissing employees belongs exclusively to CSM/CHS itself, and no statute provides for the CSM/CHS's direct liability in this regard. Likewise, pursuant Gov. Code. Section 820.8, CORPUS and ROSARIO cannot be liable for the acts of any other public employees. They are also immune from liability pursuant to Gov. Code Section 845.2 (public employee not liable for failure to provide sufficient personnel). Finally, CORPUS and ROSARIO are immune from liability pursuant to Gov. Code Section 820.2 which grants immunity to public employees for injuries resulting from discretionary decisions. (*Perez-Torres v. State of California*, (2007) 42 Cal.4th 136) *Perez-Torres* distinguished between basic policymaking or "planning" on the one hand and ministerial or "operational" levels of decision-making on the other hand, holding that the first category triggered immunity while the latter category did not.

Additionally, Gov. Code Section 844.6 provides for immunity for CSM and CHS. Section 844.6(a) states that a public entity is not liable for an injury to any prisoner. Moreover, the CSM and CHS can only be liable as provided by statute, and there is no statutory cause of action for general negligence or negligent employment or supervision of employees. (*De Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 253.) Therefore, Plaintiffs cannot assert a claim against the CSM and CHS for general negligence or negligent employment or supervision of employees.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 23

**K.  The Seventh Cause of Action (Wrongful Death) Fails to State Sufficient Facts.**

Like the medical malpractice cause of action discussed above, the CSM and CHS cannot be liable for a wrongful death cause of action. All liability for a public entity must be based on a statutory cause of action. Here, the only statute identified is C.C.P. Section 377.60, which does not state a public entity can be so liable. Plaintiffs have therefore failed to identify a statute which would hold the CSM and CHS liable for wrongful death pursuant to Section 377.60.

For CORPUS and ROSARIO, as discussed above, Plaintiffs have failed to allege that they owed Decedent a duty, they have failed to allege that they breached a duty, nor have they alleged any action or in action by them which was the direct legal cause of Decedent's death. Therea are absolutely no facts alleged that either of them did anything which caused Decedent's death. Without a duty, breach or causation, they cannot be liable for wrongful death.

For RAUNEBUEHLER, there are no facts alleged that he caused Decedent's death. Other than an opaque reference to RAUNEBUEHLER failing to check on Decedent prior to his death, there are no facts alleged that he did anything that *caused* Decedent's death. At best, RAUNEBUEHLER was alerted by other inmates that Decedent needed help, and he immediately attempted to administer Narcan to save Decedent's life. There are no facts alleged that he did anything that caused Decedent's death.

**L.  The Eighth Cause of Action (Negligence) Fails to State Sufficient Facts.**

Like the medical malpractice and wrongful death causes of action discussed above, the CSM and CHS cannot be liable for a negligence cause of action. All liability for a public entity must be based on a statutory cause of action. There is no statutory basis identified, therefore the CSM and CHS cannot be liable.

Plaintiffs allege that CORPUS and RAUNEBUEHLER failed to implement and/or provide adequate safety checks and failed to have trained personnel perform checks. (Dkt. 23, Para. 135)  For CORPUS, Plaintiffs have failed to allege that she owed Decedent a duty of care, that she breached a duty of care, or that a breach of a duty of care by her, directly caused Decedent's death. Likewise, Plaintiffs have failed to allege that RAUNEBUEHLER owed Decedent a duty of care, that he breached a duty of care, or that a breach of a duty of care by him, directly caused Decedent's death. To the contrary, Plaintiffs allege that Decedent's death was a result of a lethal cocktail of methadone administered by ARELLANO. Regarding the allegedly negligent safety checks, Plaintiffs have failed to identify any facts to support this cause of action.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 24

Plaintiffs do not allege how many safety checks were to be performed, when they were to be performed, what safety checks were missed, and whether missing a safety check by and in of itself, caused Decedent's death.

### M. Punitive Damages and Prayers for Attorneys' Fees Must be Stricken.

Plaintiffs seek punitive damages from Defendants, including the CSM and CHS throughout the FAC. (Dkt. 23, Para. 78, 91, 97, 106, 118, 126, 133, 142, pg. 32:6-7) Plaintiffs also seek attorney fees. (Dkt. 23, pg. 32:12-13) First, no punitive damages can be awarded against a public entity. (*City of Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 271; *Vt. Agency of Natural Res. V. United States ex rel. Stevens,* 529 U.S. 765, 783 (2000).) Second, punitive damages are available against individuals in a § 1983 claim, only where a defendant acts maliciously, oppressively, or in reckless disregard of the plaintiff's rights. (*Dang v. Cross*, 422 F.3d 800, 807-808 (9th Cir.2005).) Given the complete lack of facts to establish that any of the individually named Defendants acted maliciously, oppressively, or in reckless disregard, Plaintiffs have failed to establish that they are entitled to punitive damages.

Moreover, Plaintiffs are not entitled to punitive damages for a medical malpractice claim (4th cause of action), a wrongful death claim (CACI 3921), a negligent supervision claim (6th cause of action) or a negligence claim (8th cause of action). These causes of action are based in negligence which cannot form the basis for a prayer for punitive damages. Likewise, Plaintiff are not entitled to seek punitive damages from a health care provider without first filing a C.C.P. Section 425.13 motion.

Plaintiffs are also not entitled to seek punitive damages for the fifth cause of action, violation of Gov. Code Sections 844.6 and 845.6. There is no statutory basis for such damages.

Plaintiffs seek attorney's fees pursuant to § 1988; however, they have failed to allege sufficient facts under § 1983 to assert such a claim. Therefore, until such time as Plaintiffs do, their prayer for attorney's fees must be stricken. Pursuant to FRCP 12(f), Defendants request that the Court strike out all references to punitive damages and attorney's fees as redundant, immaterial, impertinent, or scandalous.

### N. The Prayer for Lost Wages/Earning Capacity Must be Stricken.

Although one of the purposes of § 1983 is to compensate persons for injuries caused by the deprivation of constitutional rights, federal law does not expressly state the remedies available to those suing under § 1983. (*Carey v. Piphus*, 435 U.S. 247, 255-56 (1978); see also *Berry v.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS - 25

*City of Muskogee*, 900 F.2d 1489, 1502 (10th Cir. 1990) ("§ 1983 does not specify ... the types of damages recoverable").) "Federal law simply does not 'cover every issue that may arise in the context of a federal civil rights action.' " (*Robertson v. Wegmann*, 436 U.S. 584, 588-89 (1974) (quoting *Moor v. County of Alameda*, 411 U.S. 693, 702-03 (1973)).) Therefore, federal courts may look to "the common law, as modified and changed by the constitution and statutes of the [forum] State," as long as the state law is "not inconsistent with the Constitution and laws of the United States." (42 U.S.C. § 1988.) Federal law does not address whether civil rights actions under § 1983 survive upon the death of the injured party. (*Robertson*, 436 U.S. at 589.) There are, however, state statutes that govern the survival of state actions upon the death of the injured party or wrongdoer. (*Id.*)

California's wrongful death statute (C.C.P. Section 377.60) "authorizes a wrongful death action by specified persons including the decedent's spouse and children." (*Ruiz v. Podolsky*, 50 Cal. 4th 838, 844 (2010).) "Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a new cause of action in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.' " (*Id.*) (citation omitted).

In sum, "[i]n a wrongful death action,...the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death." (*Davis v. Bender Shipbuilding & Repair Co.,* 27 F.3d 426, 429 (9th Cri. 1994); *see also J.K.J.*, 2020 WL 738178 at *3-4.

"The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages." (*Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015).) In addition, "in a wrongful death action the 'injury' is not the general loss of the decedent, but the particular loss of the decedent to each individual claimant." (*San Diego Gas & Elec. Co. v. Superior Court*, 146 Cal. App. 4th 1545, 1551 (2007).)

Thus, "each wrongful death claimant must show the nature of his or her loss as a result of the decedent's death." (*Id.* at 1552.) For a wrongful death cause of action in California, the plaintiff is only permitted to recover the loss of financial support, if any, the decedent would have contributed to the family during either the life expectancy that the decedent had before his/her death or the life expectancy of the plaintiff, whichever is shorter; the loss of gifts or benefits that

the plaintiff would have expected to receive from the decedent; funeral and burial expenses; and the reasonable value of household services that the decedent would have provided. The Plaintiff is also entitled to recover the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support; the loss of enjoyment of sexual relations (if any); and the loss of the decedent's training and guidance. (CACI 3921) In determining the plaintiff's loss, a jury is not permitted to consider the plaintiff's grief, sorrow, or mental anguish; or the decedent's pain and suffering.

Therefore, Plaintiff's attempt to loss of earning capacity and loss of earnings (Dkt. 23, pg. 32:9), should be dismissed, and/or stricken from the FAC. It is also unclear who the wage loss claim is for (Plaintiffs individually or Decedent's purported lost wages).

### III.   CONCLUSION

For the reasons stated herein, Defendants respectfully request that the Court grant this Motion to Dismiss in its entirety, without leave to amend.

Dated: April 21, 2026

ZENERE COWDEN & STODDARD APC

ADAM STODDARD
MARC COWDEN
Attorneys for Defendants COUNTY OF SAN MATEO (also sued herein as SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES), SHERIFF CHRISTINA CORPUS, DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER, MICHAEL DEL ROSARIO, and ANTHONY ARELLANO, R.N.