Jamie G. Goldstein (SBN: 302479)
Kelsey L. Campbell (SBN: 324015)
**ARIAS SANGUINETTI WANG & TEAM LLP**
2033 N Main Street, Suite 1000
Walnut Creek, CA 94596
Telephone: (510) 629-4877
Facsimile: (510) 291-9742
jamie@aswtlawyers.com
kelsey@aswtlawyers.com
*For electronic service, also include:*
ncservice@aswtlawyers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HARRISON and SUSAN HARRISON, individually and as Successors in Interest of the Estate of KYLE HARRISON, | CASE NO. 25-11087-AMO |
| Plaintiffs, | **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | |
| COUNTY OF SAN MATEO; SHERIFF CHRISTINA CORPUS; DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER; SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES; MICHAEL DEL ROSARIO; ANTHONY ARELLANO; R.N.; and DOES 1–40, | Date: June 18, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Araceli Martinez-Olguin |
| Defendants. | |

-1-
**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................2

I.    INTRODUCTION.......................................................................................................2

II.   STANDARD OF REVIEW .......................................................................................3

III.  LEGAL ARGUMENT................................................................................................3

    A.    Dismissal of Doe Defendants is Not Necessary or Warranted at This Time .................................................................................................3

    B.    Plaintiffs Have Established *Monell* Liability...............................................5

    C.    Plaintiffs Sufficiently Pled Deliberate Indifference to Serious Medical Needs.............................................................................................................6

        1.    Plaintiffs Sufficiently Pled Deliberate Indifference as to County, CHS, Corpus, and Rosario...................................................7

            a.    Medical Care ...............................................................8

            b.    Health and Welfare Checks .........................................9

        2.    Plaintiffs Sufficiently Pled Deliberate Indifference as to Arellano .....9

        3.    Plaintiffs Sufficiently Pled Deliberate Indifference as to Rauenbuehler ...............................................................................10

    D.    Plaintiffs Sufficiently Pled Deliberate Indifference – Failure to Protect from Harm .................................................................................................12

    E.    Plaintiffs Sufficiently Pled Loss of Familial Relationship.........................13

    F.    Plaintiffs Sufficiently Pled Medical Malpractice.......................................14

    G.    Plaintiffs Sufficiently Pled Failure to Furnish/Summon Medical Care......15

        1.    Allegations Against Rosario are Sufficiently Pled............................16

        2.    Allegations Against Arellano are Sufficiently Pled ..........................16

    H.    Plaintiffs Sufficiently Pled Negligent Supervision, Training, Hiring, and Retention..............................................................................................17

    I.    Plaintiffs Sufficiently Pled Wrongful Death .............................................19

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

J.    Plaintiffs Sufficiently Pled Negligence ......................................................20

K.    Plaintiffs Have Properly Alleged Punitive Damages and

Attorneys' Fees...............................................................................................21

L.    Plaintiffs Prayer for Lost Wages/Earning Capacity is Appropriate ...........22

IV.    CONCLUSION .........................................................................................................23

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ass'n for L.A. Deputy Sheriffs v. Cnty. of Los Angeles*,
648 F.3d 986 (9th Cir. 2011) ...................................................................................3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................3

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
(1971) 403 U.S. 388 ................................................................................................4

*Canavin v. Pacific Southwest Airlines*,
148 Cal.App.3d 512 ..............................................................................................22

*Clauson v. Superior Court*,
(1998) 67 Cal.App.4th 1253 .................................................................................22

*Committee on Children's Television, Inc. v. General Foods Corp.*,
(1983) 35 Cal.3d 197 ............................................................................................22

*Disability Rights Montana v. Batista*,
930 F.3d 1090 (9th Cir. 2019) ...............................................................................6

*Erickson v. Pardus*,
551 U.S. 89 (2007) ..................................................................................................3

*Estate of Claypool v. Cnty of San Mateo*,
U.S. Dist LEXIS 144209 (N.D. Cal. Oct. 9, 2014) .............................................14

*Estate of Prasad*,
(2013) 958 F.Supp.2d 1101 ..................................................................................20

*Farmer v. Brennan*,
511 U.S. 825 (1994) ................................................................................................6

*Gillespie v. Civiletti*,
629 F.2d 637 (9th Cir. 1980) ..................................................................................4

*Giraldo v. Dept. of Corrections & Rehabilitation*,
(2008) 168 Cal.App.4th 231 ...........................................................................17, 18

*Johnson v. Schwarzenegger*
366 Fed.Appx. 767 (9th Cir. 2010) ......................................................................12

*King v. County of Los Angeles*,
885 F.3d 548 (9th Cir. 2018) ..................................................................................5

*Lemire v. Cal. Dep't of Corr. & Rehab.*,
726 F.3d 1062 (9th Cir. 2013) ..............................................................................13

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ................................................................................3

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

*Norgart v. Upjohn Co.*,
  (1999) 21 Cal.4th 383 ...................................................................................................... 19
*Pajas v. County of Monterey*,
  2016 WL 3648686 (N.D. Cal. July 8, 2016) .................................................................. 20
*Resendiz v. Cty of Monterey*,
  2015 WL 3988495 (N.D. Cal. June 30, 2015) ............................................................... 16
*Sandoval v. Cty. of San Diego*,
  985 F.3d 657 (9th Cir. 2021) ........................................................................................... 5
*Smith v. City of Fontana*,
  818 F.2d 1411 (9th Cir. 1987) ....................................................................................... 13
*Smith v. Wade*,
  (1983) 461 U.S. 30 ......................................................................................................... 21
*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ......................................................................................... 3
*Vanegas v. City of Pasadena*,
  46 F.4th 1159 (9th Cir. 2022) .......................................................................................... 5
*Villarreal v. Cty. of Monterey*,
  254 F.Supp.3d 1168 (N.D. Cal., 2017) ..................................................................*passim*
*Wakefield v. Thompson*,
  177 F.3d 1160 (9th Cir. 1999) ......................................................................................... 4

**STATUTES**

42 U.S.C. § 1983 .................................................................................... 20, 21, 22
42 U.S.C. § 1988 ............................................................................................ 22
Cal. Civ. Code, § 3294.................................................................................... 22
Cal. Civil Code § 845.6 ................................................................................. 20
Cal. Code Civ. Proc. § 377.60.......................................................................... 19
Cal. Code Civ. Proc., § 377.34(a) .................................................................... 22
California Government Code § 845.6............................................................ 14, 16, 17

**RULES**

Federal Rule of Civil Procedure 8........................................................................ 3
Rule 8(a)............................................................................................................ 3

**OTHER AUTHORITIES**

*Braninburg v. Coalinga State Hospital*,
  2009 WL 33988886 (2009) .............................................................................. 9

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

TO THE HONORABLE COURT, DEFENDANTS, AND ALL OTHER INTERESTED PARTIE:

Plaintiffs GARY HARRISON and SUSAN HARRISON, individually and as successors in interest of the Estate of KYLE HARRISON, hereby submit this response to Defendants COUNTY OF SAN MATEO; SHERIFF CHRISTINA CORPUS; DEPUTY SHERIFF TRAINEE MAXWELL RAUENBUEHLER; SAN MATEO COUNTY CORRECTIONAL HEALTH SERVICES; MICHAEL DEL ROSARIO; ANTHONY ARELLANO, RN; and DOES 1–40's (collectively "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint.

This Opposition is based on the Memorandum of Points and Authorities attached hereto, the pleadings and records on file with this Court, and any matters of which the Court may take judicial notice, and on such oral and documentary evidence as may be presented at the hearing of this Motion, if any.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs Gary Harrison and Susan Harrison are the parents of decedent Kyle Harrison, who died while in custody at the Maple Street Correctional Center ("Jail") in San Mateo County. (Plaintiffs' First Amended Complaint for Damages ("FAC"), ¶ 8.)  Mr. Harrison had been in custody of San Mateo County since November 2022. (FAC, ¶ 1.)  He suffered from restless leg syndrome, migraines, and anxiety and was regularly taking medications for these conditions while in custody.  (*Id*.)

On March 14, 2025, Mr. Harrison was properly given his regular medications but was improperly given a dosage of methadone.  (¶ 4.)  The combination of the medications proved to be toxic.  (*Id*.)  After evening medication distribution on March 14, 2025, Mr. Harrison appeared quieter to his fellow inmates.  (¶ 52.)  Fellow inmates later saw Mr. Harrison on his bunk, slumped over and asleep in a weird position.  (¶ 53.)  In the early morning hours on March 15, 2025, several inmates heard gurgling, bubbling, and labored breathing coming from Mr. Harrison's bunk.  (¶ 54.)

Maple Street Correctional Center was understaffed and leadership relied on untrained, non-sworn employees to ensure the safety of inmates.  (¶ 5.)  On March 15, 2025, Deputy Sheriff in Training Rauenbuehler was the only custodial person on shift for a housing unit that could hold up to 64 inmates.  (¶ 55.)  Rauenbuehler was supposed to check on Harrison at 10:30 am for morning medication call but became distracted and never did.  (¶¶ 56–57.)  No other county employee had further contact with Mr. Harrison while he was alive.  (¶ 57.)  Rauenbuehler only discovered that Mr. Harrison had passed away in his cell after being notified by intercom from other inmates.  (¶ 58.)  By this time, in the evening on March 15, 2025, Mr. Harrison's body had entered rigor mortis.  (¶ 60.)

An autopsy of Mr. Harrison's body confirmed that he died due to the mixture of his prescribed medications and non-prescribed Methadone.  (¶¶ 61, 63.) San Mateo County ("County") and Correctional Health Services("CHS") had a custom of administering medications to inmates without thoroughly confirming right dosage, right drug, right time, right

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

reason, right documentation, as well as checking for allergies and potential interactions with other medications.  (¶ 38.)  In April 2024, another inmate at Maple Street Correctional Center had also been improperly administered methadone, causing the inmate serious and lasting medical complications.  (¶ 39.)

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8, a plaintiff is required to provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'"  (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).)  "Specific facts are not necessary."  (*Erickson v. Pardus*, 551 U.S. 89, 93 (2007).)

The standard at the motion to dismiss stage "is not that plaintiff's explanation must be true or even probable."  (*Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011).)  "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the allegations."  (*Id*. (emphasis in original) (quoting *Twombly*, 550 U.S. at 556).)

"In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  (*Erickson*, 551 U.S. at 94.)  Dismissal should only be granted "if it appears beyond doubt that the non-movant can prove no set of facts to support its claim."  (*Ass'n for L.A. Deputy Sheriffs v. Cnty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).)

If a complaint fails to state a plausible claim, a district court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possible be cured by the allegation of other facts."  (*Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000).)

## III.    LEGAL ARGUMENT

### A.    Dismissal of Doe Defendants is Not Necessary or Warranted at This Time

Plaintiffs bring this action alleging violations of federal constitutional rights.  Does or fictiously named defendants are permitted in federal question cases if the complaint alleges

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

why the defendants' real name was not then known or ascertainable.  (*See*, *e.g.*, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* (1971) 403 U.S. 388, 390.)  The Ninth Circuit has found that "situations arise…where the identity of alleged defendants will not be known prior to the filing of a complaint." (*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).)  "In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." (*Id*.)

Here, Plaintiffs named Does 1 through 20 as County employees or agents that were deputies or other correctional.  (FAC, ¶ 26).  Specifically, Does 1 through 10 were individuals responsible for decedent's medical needs and safety including providing adequate checks and summoning medical care.  (*Id*.)  Does 11 through 20 were responsible for hiring, screening, training, retention, supervision, discipline, counseling and control of medical, mental health, and Jail custodial staff.  (*Id*.)  Does 21 through 40 were County and CHS employees including individuals who failed to provide necessary medical care including medication administration as well as addressing and preventing medication contraindications.  (¶ 27.)  Does 31 through 40 were responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of medical, mental health and Jail custodial staff.  (*Id*.)  Further, Plaintiffs have included the Does in their allegations related to their specific conduct as opposed to Defendants' argument. (¶¶ 66–76, 82–87, 100–102, 109–110, 112–115, 121–123, 135–139).  While decedent may have known these names, Plaintiffs do not and intend to seek to amend the Complaint once they have the opportunity to engage in discovery and determine the names of the additional Defendants.  (¶ 8, 27–28.)

The Doe Defendants do not pose a major imposition at this stage of the litigation.  Dismissing them before discovery has been conducted would be premature. (*See*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (district court erred in dismissing complaint against Doe defendant simply because plaintiff "was not aware of Doe's identity at the time he filed his complaint.").)  As such, Defendants' request to dismiss the Doe Defendants should be denied.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

**B.        Plaintiffs Have Established *Monell* Liability**

Defendants argue that Plaintiffs' claims against County and CHS fail because they are only based on vicarious liability, but this is not correct.  As a pre-trial detainee, decedent Kyle Harrison had a constitutional right to adequate medical care while he was in custody at County's jail. (*Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).)  "A county is subject to Section 1983 liability 'if its policies, whether set by the government's lawmakers or by those whose edicts or acts . . . may fairly be said to represent official policy, caused the particular constitutional violation at issue.'" (*King v. County of Los Angeles*, 885 F.3d 548, 558 (9th Cir. 2018).)  "Known as *Monell* liability, a plaintiff must . . . establish that 'the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered.'" (*Vanegas v. City of Pasadena*, 46 F.4th 1159, 1167 (9th Cir. 2022).)

Plaintiffs have sufficiently alleged customs and practices of County and CHS to establish the *Monell* standard. Inmates rely on County and CHS to administer prescribed medications to treat known medical conditions.  (FAC, ¶ 37.)  Likewise, inmates rely on County and CHS not to administer medications that are contraindicated and that could result in adverse reactions, medical complications, and potentially death.  (*Id*.)

County and CHS have a longstanding history and practice of failing to provide adequate medical care including administration of medications.  (¶ 37.)  County, including CHS, had a custom of administering medications to inmates without thoroughly confirming right dose, right drug, right time, right reason, right documentation, as well as checking for allergies and potential interactions with other medications. (¶ 38.)  Upon information and belief, as a result of this custom, inmates have died while in custody.  (¶ 39.)

Understaffing at detention facilities is known to lead to violence, reduced access to medical care, and harm to inmate mental health and safety.  (¶ 33.)  Staffing ratios are set by the State.  (*Id*.).  Upon information and belief, County chronically understaffed its detention facilities, including Maple Street Correctional Center.  (¶ 40.)  Upon information and belief, to overcome the shortfall in deputy sheriffs and correctional officers, County had a custom of using non-sworn employees (trainees) to staff housing units.  (¶ 40.).  County also had a custom

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

of relying on sworn and non-sworn employees to work overtime to meet staffing needs. (*Id.*)

Regular welfare checks of inmates are vital to ensure inmate safety, prevent deaths, and provide legally mandated care to vulnerable populations. (¶ 43.). Regular checks also ensure compliance with correctional rules and standards. (*Id.*) County had a custom of not training custody staff on the performance of health and welfare checks. (*Id.*) County allowed untrained deputy trainees to perform health and welfare checks. (*Id.*)

Plaintiffs have sufficiently pleaded customs and/or practices of County and CHS to meet the *Monell* standard. As such, Plaintiffs can maintain claims for Deliberate Indifference to Serious Medical Needs, Deliberate Indifference—Failure to Protect from Harm, and Loss of Familial Relationship against the County and CHS.

### C.    Plaintiffs Sufficiently Pled Deliberate Indifference to Serious Medical Needs

Defendants assert that Plaintiffs failed to state a claim for deliberate indifference to serious medical needs, however, Plaintiffs have provided a list of allegations and facts that meet the pleading requirements. The Eighth Amendment to the U.S. Constitution imposes certain duties on prison officials: (1) to provide humane conditions of confinement; (2) to ensure that inmates receive adequate food, clothing, shelter, and medical care; and (3) to "take reasonable measures to guarantee the safety of the inmates." (*Farmer v. Brennan*, 511 U.S. 825, 832 (1994).)

An Eighth Amendment claim based on deliberate indifference must satisfy both an objective and subjective component test. (*Farmer,* at 834.). A prison official can be found liable if they "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (*Id*. at 837.) "The Eighth Amendment's prohibition against cruel and unusual punishment requires that prisons provide mental health care that meets minimum constitutional requirements." (*Disability Rights Montana v. Batista,* 930 F.3d 1090, 1097 (9th Cir. 2019).)

**1. Plaintiffs Sufficiently Pled Deliberate Indifference as to County, CHS, Corpus, and Rosario**

County operates the Jail and CHS provides medical care to inmates at the Jail. (FAC, ¶ 17). County through CHS was responsible for ensuring medical services. (¶ 18). County by law, possess the ultimate authority over and responsibility for medical care, treatment and safety of inmates, including decedent Kyle Harrison. (*Id.*)

Corpus, as the sheriff, was responsible for the administration of the Jail, promulgation of the policies and procedures, and allowance of the practices/customs pursuant to which the alleged acts of the San Mateo County Sheriff's Office were committed. (¶ 19). She was charged with promulgating and implementing policies and procedures for welfare checks on inmates and was aware that failure to provide adequate checks in both timing and observation would likely result in serious harm. (¶ 20). It is believed that failure to provide adequate checks has resulted in serious harm and numerous deaths at the Jail. (*Id.*) Despite this, Corpus continued to allow inadequate checks increasing the likelihood of serious harm and death to inmates, including Mr. Harrison. (*Id.*) Corpus' practice of failing to implement and carry out policies and procedures related to adequate checks resulted in multiple deaths in the Jail, including Mr. Harrison's death, and constitutes deliberate indifference. (*Id.*)

Rosario was the director of CHS and responsible for promulgating and implementing policies and procedures on the delivery of constitutionally compliant medical healthcare and had supervisory oversight of all medical staff including supervision and training related to all medical policies and procedures. (¶ 21). He was also charged with promulgating and implementing policies and procedures for medication administration. (*Id.*) Appropriate administration of medication ensures patient safety by confirming right dosage, right drug, right time, right reason, right documentation, as well as checking for allergies and potential interactions with other medications. (*Id.*) Rosario was aware that accurate medication administration was necessary to avoid serious risk of harm and death to incarcerated individuals. (*Id.*) That awareness required Rosario to create and implement policies to ensure inmates received the correct medications. *Id.* The failure to undertake this duty resulted in the lack of policies and procedures

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

and/or the lack of adequate implementation and resulted in serious harm to inmates, including the death of Mr. Harrison and constitutes deliberate indifference. *Id.*

### a. Medical Care

The inmates at the Jail are entirely dependent on County and CHS employees for their safety, including medical care. (¶ 36.) Inmates rely on County and CHS to treat medical conditions and also to not administer contraindicated medications. (¶ 37.) It is believed that County and CHS had inadequate policies in place to carry out these measures, which would and did result in serious harm and death to inmates. (*Id.*) In fact, prior to decedent's death, an inmate perished after being given methadone he was not prescribed. (¶ 39.) County, CHS, Corpus, and Rosario knew that providing contraindicated medication led to a high likelihood of severe harm. (¶ 41.) Despite this, they failed to implement policies and safeguards to prevent non-prescribed and contraindicated medications from being provided. (¶ 44.) This pattern and practice of providing incorrect medication resulted in their deliberate indifference to the health and well-being of inmates, including decedent. (*Id.*)

Further, County, Corpus, and Rosario failed to adequately train medical staff in their monitoring of inmates, especially those prescribed multiple central nervous system (CNS) suppressing medications, which required more frequent monitoring and vital sign checks. (¶ 45.) They knew of the substantial risk of harm but failed to take steps to prevent or diminish the harmful effects of these unlawful policies and practices. (¶ 47.) County, Corpus, and Rosario's failure to have a system to alert them to contraindicated medications resulted in their failure to operate a constitutionally adequate medication administration system. (¶ 48.)

Despite their knowledge and decedent's serious need for medical care, County, CHS and Rosario made an intentional decision not to implement or to have inadequate policies, procedures and practices for proper medication administration to inmates, including not provided contraindicated medications. (¶ 66.) This included not having a system in place to alert them a contraindicated medication was being provided to an inmate. (¶ 67.) Their failure to implement the policies and procedures put decedent at substantial risk of harm, specifically, allowing for Arellano to provide decedent non-prescribed contraindicated

medication. (¶ 68.) The lack of system not only allowed this to occur, but also allowed Mr. Harrison to languish for hours without intervention and ultimately resulting in his death. (*Id*.)

### b. Health and Welfare Checks

Despite the need for adequate care, County chronically understaffed its jails, including Maple Street, resulting in a shortage of correctional officers and the use of trainees to perform peace officer duties. (¶ 40.) In fact, on March 15, 2025, Rauenbuehler was the only custodial person on shift in a housing unit that could hold up to 68 inmates. (¶ 55.) Further, County and Corpus had a custom of not training custody staff on performing health and welfare checks. (¶ 43.) Regular welfare checks are vital to ensure inmate safety and are legally mandated. (*Id*.) County and Corpus allowed Rauenbuehler, a deputy trainee, to have the responsibility of performing health and welfare checks, including medication checks. (*Id*.) This was despite knowing this was not permitted and knowing Rauenbuehler did not have the skills or knowledge on how to correctly perform the checks. (¶¶ 43, 70). They also knew that his failure to perform adequate checks would likely lead to serious harm, especially when the check was on an inmate-patient who did not show up for morning medication call and was non-responsive to a request for him to respond. (¶ 43.) County and Corpus have a pattern and practice of failing to properly train on the performance of health and welfare checks and in having unqualified trainees perform these checks as evidenced here with Mr. Harrison's death. (¶¶ 41, 43, 69.)

### 2. Plaintiffs Sufficiently Pled Deliberate Indifference as to Arellano

Defendants repeatedly misstate the facts in this case ignoring that the methadone was not a prescribed medication. Defendants argue that the allegations do not rise to deliberate indifference because this was simply a contraindicated prescribed medication provided and cite to *Braninburg v. Coalinga State Hospital*, 2009 WL 33988886 (2009), which is an unreported decision and should not be considered. Further, in that case the medication was prescribed, whereas here, the medication was not prescribed making *Braninburg* distinguishable, even if it is considred. (*Id*. at *3.) Further, deliberate indifference does not require that Arellano prescribe any medication, and Arellano cites no authority to make this assertion. Nor does

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

Arellano cite any caselaw requiring that he had actual knowledge that the administration of methadone was certain to cause Mr. Harrison's death, as Arellano suggests when noting that Plaintiffs alleged that it "could" cause a lethal drug interaction versus a guaranteed lethal result. (FAC ¶ 33.)

Arellano was a registered nurse responsible for the administration of medical care to inmates, including decedent. (¶ 23.) On March 14, 2025, Arellano knowingly administered a non-prescribed medication, methadone, to Mr. Harrison along with multiple prescribed medications while being aware this could cause a lethal drug interaction. (¶¶ 23, 47, 62.) Arellano did so without confirming the right dosage, reason and documentation for the methadone. (¶¶ 62, 68.) Arellano, as a registered nurse and member of the medical staff, was aware that providing methadone in addition to Mr. Harrison's prescribed drugs was a lethal mixture of drugs. (¶ 23.) Despite this, he allowed these medications to be provided to Mr. Harrison, and his respiratory system became more and more depressed until he died. (*Id.*)

By administering a non-prescribed medication to an inmate-patient, Arellano was deliberately indifferent to Mr. Harrison's medical needs, causing harm, and eventually death to him. (¶ 71.)

### 3. Plaintiffs Sufficiently Pled Deliberate Indifference as to Rauenbuehler

Rauenbuehler was a deputy in training and not a sworn police officer. (¶ 25.) He had not gone to the police academy and had no prior law enforcement, corrections, or military experience. (*Id.*) He was entrusted to perform health and welfare checks, which including confirming each inmate he checked on was alive, breathing, and not in distress. (¶¶ 25, 75.) He was also responsible for summoning medical care for the health and safety of inmates, including Mr. Harrison. (¶ 25.) He was aware of the need for health and welfare checks to protect inmates from harm and the failure to do that would put inmates, including Mr. Harrison, at serious risk of harm and death. (*Id.*)

Rauenbuehler's pattern and practice was to perform inadequate checks as evidenced from the limited time he took to perform checks on inmates prior to and on March 14–15, 2025, including the checks for Mr. Harrison. (*Id.*) Skipping checks and/or not visually confirming an inmate's status

puts inmates in danger. (*Id*.)  Further the failure to perform checks or performing inadequate checks was likely to lead to serious harm and did in fact lead to Kyle Harrison's death making Rauenbuehler's actions and inactions constitute deliberate indifference. (*Id*.)

On March 15, 2025, when decedent did not show for medication call, Rauenbuehler advised he was going to check on Mr. Harrison. (¶ 57.)  While he claimed after his death that he did not remember if he had spoken to Mr. Harrison at the time of the medication check on March 15, 2025, at 10:30 am, an investigation revealed that he was distracted by another employee bringing him a meal and forgot to call for Mr. Harrison. (¶¶ 25, 56.)  Rauenbuehler made an intentional decision not to conduct regular checks on Mr. Harrison. (¶ 73.)  He did not have any contact with Mr. Harrison while he was still alive and failed to perform the check knowing that the lack of adequate checks can lead to serious harm and death, and did in fact result in Mr. Harrison's death. (¶¶ 57, 74.)  Rauebuehler was not present at Mr. Harrison's location until 4:46 pm and only after inmates alerted him over the intercom. (¶¶ 58–59.)  Harrison was already dead and had been for a period of time as evidenced from the condition of his body. (¶¶ 59–60, 74.)

Plaintiffs § 1983 are not based on issues of professional judgement or differences in opinion on medical care.  Administering unauthorized or non-prescribed medication is considered a medication error. (*See generally*, *Coleman v. Newsom* and *Plata v. Newsom* (ongoing class action litigation holding that, among other issues, systemic failures in medication distribution violate inmates' constitutional rights).)  This was not a case where one medication was prescribed instead of another, or one type of treatment was provided over another based on judgment.  Mr. Harrison was not prescribed the medication he was provided. Additionally, it was contraindicated when provided with his other medication.  There was no monitoring of Mr. Harrison as he deteriorated for hours without a medical check or a health and welfare check.  These multiple failures led to his death.  Plaintiffs have properly alleged deliberate indifference to serious medical needs against Defendants.

/ / /

/ / /

/ / /

-11-
**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

**D.    Plaintiffs Sufficiently Pled Deliberate Indifference – Failure to Protect from Harm**

Defendants again argue that County and CHS cannot be liable because the claim is based on respondeat superior.  As previously noted, County and CHS can be held liable for § 1983 claims.  For the same reasons that Plaintiffs have adequately established deliberate indifference to serious medical needs, Plaintiffs have also established the elements for failure to protect from harm as both claims are based on the same series of events, obligations, failures, and facts.  Plaintiffs, therefore, will not recite all the previously established allegations and facts and instead directs the Court's attention to Plaintiffs' Second Claim in addition to all the previously established facts in the prior section.  (*See* FAC, ¶¶ 82–90.)

Importantly, Defendants' citation to a quotation within *Johnson v. Schwarzenegger* is inapplicable, as that case involved litigation over a temporary *interruption to prescribed medication* for an inmate—not an incorrect medication being administered.  (366 Fed.Appx. 767, 769 (9th Cir. 2010).)  The proposition that Defendants try to make is not persuasive as the court only passingly made the statement without any further factual analysis.

Likewise, Defendants' assertion that "causing a patient to receive a single dose of medicine does not rise to the level of constitutional violation" is unsupported, and frankly, such a broad holding would never be binding, especially if a single dose of medicine did in fact kill a patient, as it did for Mr. Harrison.  Moreover, Plaintiffs have established that Defendants were on notice of the serious risk of harm and potential for inmates receiving non-prescribed medication as the same issue previously occurred seriously harming another inmate.  (FAC, ¶ 39.) Mr. Harrison was administered a non-prescribed medication and no one—not medical staff or custody staff—ever followed up with Mr. Harrison, even after he did not attend medication call in the morning.  (¶ 47, 61–63.)  Plaintiffs have sufficiently pled their claim and the motion should be denied.

/ / /

/ / /

-12-
**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### E. Plaintiffs Sufficiently Pled Loss of Familial Relationship

Plaintiffs Gary and Susan Harrison alleged that they were deprived of a familial relationship with their son Kyle Harrison who died while in custody at a San Mateo County jail. (FAC, ¶ 8.) In order to state such a claim, a plaintiff must allege facts to show that the official's conduct "shocks the conscience." (*Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).) "A prison official's deliberately indifferent conduct will generally 'shock the conscious'" if "the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." (*Id.* at 1075.)

As more fully described above, Defendants' conduct was a gross deviation from traditional notions of appropriate custodial and medical care. Inmates in correctional facilities are entirely reliant on government officials for their safety and medical care. (FAC, ¶ 36.) Inmates rely on County officials to properly administer medication, including thoroughly confirming the right dosage, right drug, right time, etc. (¶ 38.) Inmates can, and have, died at detention facilities due to the improper administration of medications. (¶ 39.) Similarly, regular welfare checks are vital to ensure inmate safety, prevent deaths, and provide legally mandated care for vulnerable populations. (¶ 43.)

In the evening on March 14, 2025, Arellano gave the dosage of non-prescribed methadone to Mr. Harrison. (¶ 62.) That dosage of methadone caused a toxic reaction with Mr. Harrison's regularly prescribed medications, resulting in his death. (¶ 63.) In April 2024, another inmate at Maple Street Correctional Center had also been injured by the administration of non-prescribed methadone. (¶ 39.) Such conduct shocks the conscious.

On the morning of March 15, 2025, Rauenbuehler checked on other inmates, but became more interested in his lunch delivery and failed to check in on Mr. Harrison. (¶ 57.) Rauenbuehler's next contact was with a then-deceased Mr. Harrison, many hours later, only after receiving an alert from other inmates. (¶ 59.) Such conduct shocks the conscious.

Parents and children possess a constitutionally protected liberty interest in companionship and society with each other. (*Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987).) A parent's protected liberty interest includes a companionship interest (even

-13-

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

after a child reaches the age of majority).  (*Id*. at 1419.)

Defendants contend that Plaintiffs Susan and Gary Harrison's relationship with their son Kyle Harrison is insufficient to warrant constitutional protection.  Kyle was twenty-five (25) years old when he died in custody.  (FAC, ¶ 6.)  Prior to incarceration, Mr. Harrison lived in the family home with Plaintiffs Gary and Susan.  (¶ 7.)  While incarcerated, Mr. Harrison spoke with his parents daily, messaged through a county-approved tablet, and had weekly video visits.  (*Id*.)  Gary and Susan took care of Mr. Harrison's chihuahua during his incarceration.  (*Id*.)  Mr. Harrison was hopeful that with time served, his incarceration wasn't going to be much longer (when he passed) and he looked forward to reuniting with his dog and parents upon release.  (¶¶ 1, 7.)

Plaintiffs have properly pleaded more than just a biological link with their son, decedent Kyle Harrison.  Due to Plaintiffs' ongoing, loving relationship with Mr. Harrison, they were deprived of their relationship with their son when he died in custody.

## F.    Plaintiffs Sufficiently Pled Medical Malpractice

Defendants argue that CHS and County cannot be held liable because there is no statutory basis.  This is incorrect as they ignore California Government Code § 845.6, which in relevant part states that "a public employee and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."  Section 845.6 "permits claims against a public entity based upon its employees' failure to furnish medical care."  (*Estate of Claypool v. Cnty of San Mateo*, U.S. Dist LEXIS 144209 *24–25 (N.D. Cal. Oct. 9, 2014).)  A claim can be brought to the extent it is based on the negligence, negligent supervision, training, hiring and retention of employees regarding medical care.  (*Id.* at *25.)  Here, Plaintiffs have done just that as previously described related to County and CHS's failure and the claim should not be dismissed.  (*See, also,* FAC ¶¶ 100–101, 103–104.)

As previously stated, Rosario was the Director of CHS and charged with promulgating and implementing polices and procedures for medication administration to incarcerated individuals.  (FAC, ¶ 22.)  This included the appropriate administration of medication to ensure patient safety by

-14-

confirming right dosage, right drug, right time, right reason, right documentation, as well as checking for allergies and potential interactions with other medications. (*Id*.) Rosario was aware that accurate medication administration was necessary to avoid serious risk of harm and death to incarcerated individuals within County's detention facilities. (*Id*.) He was required to implement the policies so inmates would receive correct medication. (*Id*.)

Rosario failed to implement adequate policies to address proper medication administration and safeguards to prevent the administration of incorrect medication to inmates. (FAC, ¶¶ 44, 101.) Rosario also failed to supervise and train medical providers on these policies. (*Id*.) Rosario also failed to have a system in place to alert medical providers of contraindicated medications being provided to inmates. (¶ 48.) He knew or should have known of the flawed system at the Jail causing inmates to received contraindicated medications. (¶ 44.)

Rosario also failed to train medical staff to identify inmates at risk of possible lethal prescription interactions to avoid serious risk of harm and death. (FAC, ¶¶ 45, 101.) He also failed to train medical staff on adequate monitoring of inmates when on multiple CNS suppressing medications. (*Id*.)

As also previously noted, Arellano provided Mr. Harrison his medications on March 14, 2025. (FAC, ¶ 52.) In addition to the prescribed medications, Arellano gave Mr. Harrison methadone, which was not prescribed. (¶¶ 62, 100.) Arellano failed to monitor Mr. Harrison, including when he did not show up for medication administration after the lethal dosage was given. (¶ 102.) Arellano was a registered nurse and aware that providing methadone in addition to Mr. Harrison's prescribed medications was a lethal mixture but still allowed this to occur ultimately resulting in Mr. Harrison's death. (¶¶ 23, 47, 102.)

Plaintiffs have properly pleaded medical malpractice against Defendants County, CHS, Rosario, and Arellano.

## G. Plaintiffs Sufficiently Pled Failure to Furnish/Summon Medical Care

Defendants argue that they are immune from liability and that Plaintiffs broad statements about what Defendants did are not pled with particularity. Defendants, however, ignore the statutory

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

exceptions to immunity as previously explained and completely ignore Plaintiffs' specific allegations about what each Defendant knew as it relates to this claim.  Pursuant to Cal. Gov. Code § 845.6, a public entity or public employee is liable for an injury proximately caused to a prison where: (1) "the employee is acting within the scope of his employment," (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he fails to take reasonable action to summon such medical care."  (emphasis added).

### 1.  Allegations Against Rosario are Sufficiently Pled

Rosario, as a prison official, may be held liable even if he did not have direct contact with Mr. Harrison.  Prison officials may be liable for their employees' failure to summon medical care. (*See, Resendiz v. Cty of Monterey*, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015).)  Gov. Code § 845.6 allows for a prison official to be held negligent for the "supervision and training as when to summon medical care."  (*Villarreal v. Cty. of Monterey*, 254 F.Supp.3d 1168, 1189 (N.D. Cal., 2017).)  As explained, Rosario's position required him to supervise and train medical personnel on providing medical care, including medication administration.  His failure to provide training and supervision as it relates to the actions of Arellano and other health officials in their failure to summon or provide medical care, makes this a viable claim against him and it should not be dismissed.  (*See Villarreal*, 254 F.Supp.3d at 1189; FAC ¶¶ 41, 45, 47–48.)

### 2.  Allegations Against Arellano are Sufficiently Pled

As noted in the prior section, Arellano provided Mr. Harrison with his medications on March 14, 2025, and also provided methadone.  (FAC, ¶¶ 52, 62.)  Arellano failed to monitor Mr. Harrison, including when he did not show up for medication administration after the lethal dosage was given. (¶ 111.)  Arellano was a registered nurse and aware that providing methadone in addition to Mr. Harrison's prescribed medications was a lethal mixture but still allowed this to occur and failed to take reasonable action, summon care or provide care ultimately resulting in Mr. Harrison's death. (¶¶ 23, 47, 114.)

Finally, as also previously stated, Rauenbuehler was responsible for performing health and welfare checks that included confirming inmates were alive, breathing, and not in distress.  (FAC,

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED COMPLAINT**

¶ 25.) In the event an inmate was non-responsive or in distress, Rauenbuehler was responsible for summoning medical care for the health and safety of the inmate, including Mr. Harrision. (*Id*.) He was aware checks were to protect innates from harm and failure to do them would put inmates, including Mr. Harrison, at risk of serious harm and death. (*Id*.) Rauenbuehler knew or had reason to know that Mr. Harrison was in need of immediate medical care on March 15, 2025. (FAC, ¶ 110.) In failing to perform adequate checks, Mr. Harrison was ignored when he was in serious need of medical attention for hours on March 15, 2025. (*Id*.) As a result of his failure, Rauenbuehler failed to summon medical care and led to Mr. Harrison's death. (*Id*.)

Plaintiffs have properly pleaded failure to furnish/summon medical care against all Defendants.

**H.      Plaintiffs Sufficiently Pled Negligent Supervision, Training, Hiring, and Retention**

Defendants argue that they are immune from liability and that Corpus and Rosario cannot be held responsible under this theory because of vicarious liability. Neither of these arguments are accurate. Government Code § 845.6, as previously explained, "permits claims against prison officials, including sheriffs, for negligent supervision and training" as they relate to the failure to train or supervise employees regarding furnishing or summoning medical care. (*Villarreal*, 254 F.Supp.3d at 1189–90.)

Moreover, Rosario and Corpus cite to zero law that states because the County or CHS is vicariously liable for their actions that Rosario and Corpus cannot be held directly liable. Additionally, while not required as liability is viable under Gov. Code § 845.6, it has been held that the relationship between an inmate and the state is protective in nature, "such that the jailer has control over the prisoner, who is deprived of the normal opportunity to protect himself from harm inflicted by others." (*Giraldo v. Dept. of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 250.) California case law has established that a special relationship exists between jailer and prisoner, and as such, the state owes a duty to protect prisoners from unreasonable risk of harm. (*Giraldo v. Dept. of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251.) The issue of who comes into the category of 'jailer' was not before the

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

*Giraldo* court.  (*Id.* at 253.)  However, when reaching its holding, the *Giraldo* court directly cited to numerous cases elaborating on the special duty held by corrections officials, prison officials, penal authorities, jailers, police officers, and sheriffs.  (*Id.* at 248–249.)  Defendants' assertion that Defendants Corpus and Rosario owed no duty to Decedent Kyle Harrison is illogical and not supported by law.

Further, Defendants passingly cite several statutory immunities, though Plaintiffs make no allegations that directly implicate these immunities: Gov. Code § 845.2 (immunity for failure to provide sufficient equipment, personnel, or facilities) and Gov. Code § 820.2 (immunity for an act or omission that was the result of an exercise of discretion vested in him).

Plaintiffs have thoroughly pled this claim.  County and CHS by and through their employees and agents and Corpus and Rosario had a duty to hire, supervise, train and retain employees and/or agents so that those employees and/or agents refrained from the alleged conduct in this matter. (FAC, ¶ 121.)

County and CHS through their agents and employees and Corpus and Rosario failed to hire, supervise, train, and retain employees to provide adequate medical care, health and welfare checks and medical checks.  (FAC, ¶ 123.)  They also failed to hire, supervise, train, and retain employees in providing necessary medical care for patients including not providing patients with prescriptions that would have lethal consequences when mixed with contraindicated medications and the necessity to closely monitor inmates on multiple CNS suppressing medications, especially when they do not attend medication administration.  (*Id.*)  They also failed to hire, supervise, train and retain employees that would administer proper health and safety checks and appreciate the deteriorating condition of an inmate, which would require the immediate need to summon medical care for further assistance.  (*Id.*)

County and Corpus had a custom of not training custody staff on the performance of health and welfare checks.  (FAC, ¶¶ 43, 48.)  They allowed an untrained deputy trainee, Rauenbuehler, to perform health and welfare checks, including medication checks, knowing he did not have the skills or knowledge on how to correctly perform the checks and knowing that a failure to perform an

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

adequate check would likely lead to serious harm, especially when the check related to an inmate/patient who did not appear at the morning medication administration call and was non-responsive to a request for him to respond. (*Id.*) County and Corpus' pattern and practice of failure to properly train on the performance of health and welfare checks and having untrained deputies carry out duties of trained peace officers resulted in the deliberate indifference to inmates' health and safety including Mr. Harrison. (*Id.*)

County, Corpus and Rosario failed to train or supervise medical providers on medication administration, and they knew or should have known of the flawed system including providing inmates contraindicated medications. (FAC, ¶ 44.) County, Corpus, and Rosario failed to adequately train medical staff to identify inmates who are at risk of possible lethal prescription drug interactions to avoid serious risk of harm and death from the wrong medications being administered. (¶ 45.) They also did not train medical staff to perform adequate monitoring of inmates, especially when inmates were prescribed multiple CNS-suppressing medications; such inmates require more frequent monitoring and checking of vital signs. (*Id.*)

Plaintiffs properly pleaded negligence supervision, training, hiring, and retention against Defendants County of San Mateo, CHS, Corpus, and Rosario.

## I.    Plaintiffs Sufficiently Pled Wrongful Death

Defendants County and CHS again assert immunity, which is not a viable defense under Gov. Code § 845.6. (*See Villarreal*, 254 F.Supp.3d at 1190–91.) They cite no further legal argument other than immunity, and therefore, Plaintiffs do not further address the wrongful death claim against CHS and County.

Defendants next argue that Corpus and Rosario did not owe a duty, did not breach a duty, nor were they a legal cause of decedent's death. For the reasons previously established above, Plaintiffs have sufficiently pled their claim against Rosario and Corpus. Specifically, the elements of a California wrongful death claim are: (1) a wrongful act or neglect on the part of one or more persons, (2) causes the death of a person. (Cal. Code Civ. Proc. § 377.60.) A wrongful death claim may be predicated on negligence or other tortious conduct. (*Norgart v. Upjohn Co.* (1999) 21

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Cal.4th 383, 390.)  Both § 1983 (deliberate indifference) and failure to summon medical care under Cal. Civil Code § 845.6 can form the basis for a wrongful death claim.  (*See Estate of Prasad* (2013) 958 F.Supp.2d 1101, 1118.)  Both 42 U.S.C. § 1983 and C.C.P. § 845.6 can be asserted against public entity defendants.  Plaintiffs properly pled Defendants' wrongful acts and/or neglect.  (*See* FAC, ¶¶ 18–22, 43–45, 48, 129–133.).

Finally, Rauenbuehler asserts there is no allegations he caused decedent's death. Rauenbuehler ignores all the previously stated allegations with regard to his failure to perform a check on Mr. Harrison when he was alive, in distress, and in need of medical attention.  His failure to perform his duty result in Mr. Harrison not receiving medical attention and ultimately leading to his death.  Plaintiffs have sufficiently alleged their claim and it should not be dismissed.

**J.    Plaintiffs Sufficiently Pled Negligence**

County and CHS again claim immunity, which is improper under Govt. Code § 845.6.  (*See Villarreal*, 254 F.Supp.3d at 1191.) Policies, procedures, actions, and omissions failing to summon medical care to an inmate may form the basis of a negligence claim.  (*See*, *e.g.*, *Pajas v. County of Monterey*, 2016 WL 3648686, at *30–31 (N.D. Cal. July 8, 2016).)

Plaintiffs have adequately alleged the policies, procedures, actions, and omissions that violated the constitution and violated Defendants' duty to summon medical care under § 1983 and C.C.P. § 845.6:

- County, by and through its employees, failed to implement and/or provide adequate health and safety checks and failed to have trained personnel to perform checks. (FAC, ¶ 135)

- Raeunbuehler failed to perform adequate health and welfare and safety checks so as to recognize Mr. Harrison's signs of distress.  (¶ 136)

- County and Corpus failed to appropriately supervise, review, and ensure the compliance of Raeunbuehler when performing checks (¶ 137)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

- County and Corpus failed to adopt the minimum policies, procedures, and training necessary to ensure identification or response to an inmate in crisis and to have trained personnel checking on the health and safety of inmates. (¶ 137)

- Defendants County, Corpus, Rauenbuehler, and Does 1–20 acted negligently and improper, breached their respective duties, and as a result, Mr. Harrison sustained injuries leading to his death. (¶ 138)

As already addressed above, in addition to their duty pursuant to Govt. Code § 845.6, Corpus and Rosario both owed a duty to decedent, as 'jailers,' they had a special relationship to Mr. Harrison as an inmate, and therefore owed a duty to protect.

Finally, as described in the prior section Rauenbuehler was on shift and was *supposed to* conduct safety checks and check with Mr. Harrison regarding medication call. (¶ 57). Due to the failure to perform required checks, Mr. Harrison's condition was not discovered until he had already succumbed to the toxic mixture of medications. (¶¶ 59–60.) Plaintiffs have properly pled their claim and the motion should be denied.

### K.    Plaintiffs Have Properly Alleged Punitive Damages and Attorneys' Fees

County and CHS assert that they are not subject to punitive damages, and Plaintiffs do not disagree. County and CHS cite punitive paragraphs that do not include County or CHS.

Defendants also assert that Plaintiffs have failed to sufficiently allege punitive damages against the individual Defendants, however, this is not correct. Punitive damages are available against individual government officials in § 1983 actions when their conduct shows evil motive or reckless/callous indifference to federally protected rights. (*Smith v. Wade* (1983) 461 U.S. 30, 56.) Plaintiffs have properly pled that individual defendants' acts were "conducted with conscious disregard for the safety of Mr. Harrison and were therefore malicious, wanton, and oppressive." (FAC, ¶¶ 78, 91, 97.) Contrary to Defendants' assertion, Plaintiffs have made the requisite pleadings at this stage to allege punitive damages for the § 1983 claims.

Further, Plaintiffs are permitted to allege punitive damages against the individual defendants for the state law claims. To recover such damages, plaintiffs must prove by clear

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

and convincing evidence that the defendant acted with malice, oppression, or fraud. (Cal. Civ. Code, § 3294.) The standard for determining a motion to strike punitive damages is whether plaintiff has alleged "ultimate facts" showing an entitlement to exemplary damages. (*Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255.) Further, less specificity is required in pleading "when the facts lie more in the knowledge of the opposite party." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216–17.)

Plaintiffs alleged that the actions of Corpus, Rauenbuehler, Rosario, Arellano, and Does 1-40 were "willful, wanton, malicious, and oppressive," thereby justifying an award of exemplary and punitive damages. (FAC, ¶¶ 106, 118, 126, 142.) As outlined throughout this response, Plaintiffs have pled the willful, wanton, malicious, and oppressive acts and omissions, and lack of appropriate policies and procedures by individual defendants and should not be disturbed.

Plaintiffs have sufficiently pled the § 1983 claims, and thus are permitted to seek attorneys' fees pursuant to § 1988. Plaintiffs properly pled, "For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and as otherwise authorized by statute or law."

**L.    Plaintiffs Prayer for Lost Wages/Earning Capacity is Appropriate**

Plaintiffs are entitled to allege a claim of damages for lost future income of the decedent in a wrongful death action. (*See*, *e.g.*, *Canavin v. Pacific Southwest Airlines*, 148 Cal.App.3d 512, 520 (explaining that damages in a wrongful death action are the value of the benefits the heirs could reasonably expect to receive from the deceased if he had lived, including earning capacity).) Conversely, in a survival action, damages are narrowly limited to the "loss or damage that the decedent sustained or incurred before death." (Cal. Code Civ. Proc., § 377.34(a).)

In this case, the lost future income is the financial support that Decedent Kyle Harrison would have provided to his parents Susan and Gary Harrison had he not wrongfully died while in custody of the jail. Mr. Harrison was only twenty-five years old when he passed away and was expecting an imminent release from incarceration at the time he passed away in 2025. (FAC, ¶¶ 1, 6.) He looked forward to being reunited with his parents following his

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

incarceration. (¶ 7.) Mr. Harrison likely had many income-generating years ahead of him and would have provided support to his parents. Such evidence is subject to discovery and expert opinion. At this pleading stage, Plaintiffs have sufficiently alleged facts to permit an allegation of lost future income in the complaint

## IV.   CONCLUSION

Plaintiffs have sufficiently pled the causes of action. Plaintiffs have detailed their allegations in the description of the parties and the facts section, all of which are incorporated into each and every cause of action. Defendants' Motion to Dismiss should be dismissed.

Dated: May 5, 2026

**ARIAS SANGUINETTI WANG
& TEAM LLP**

By:   */s/ Kelsey L. Campbell*
      JAMIE G. GOLDSTEIN
      KELSEY L. CAMPBELL

*Attorneys for Plaintiffs*

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**